Drummond, 0. J.
These were bills filed by the plaintiffs as original and cross-bills, some of them claiming to be bond holders under certain mortgages or deeds of trust, and Campbell claiming to he a trustee under certain deeds of trust, which were given to secure certain bonds issued by the railroad company. These bills were filed in 1876 and 1877, and a receiver was placed in possession of the property under the order of the court, which included a line of railway from Cincinnati, in Ohio, to East St. Louis, in Illinois, with a branch to Louisville, and what is called the Springfield Division, in Illinois. It was consequently a railway existing and operated under the laws of three states, Ohio, Indiana and Illinois. These bills asked for foreclosure of the mortgages or deeds of trust, and a sale of all the property of the railway company. Various mortgages and deeds of trust had been given on parts of the combined railway before those which are in controversy here, and there had been foreclosure proceedings instituted on those prior mortgages or deeds of trust in the three states, and sales had taken place of different portions of the property, covering altogether the entire line of the railway. The railway has continued to be operated by the *37 receiver, under the direction of the court, since the bills in this case were filed. Application was made to the court in November last, by cross-bill, on behalf of certain preferred stockholders, claiming that as such they were entitled to priority of lien over all indebtedness and mortgages, or deeds of trust, made after the date of certain certificates given in 1867, which will be more particularly referred to hereafter. These stockholders were allowed to intervene for the protection of their interests in any form of pleading that they might select, and accordingly they have filed a cross-bill, setting up their claim to priority of lien, and to that cross-bill a demurrer has been interposed by those representing what is called the second mortgage or deed of trust, and other indebtedness of the company; and the question now presented for consideration is as to the sufficiency of this cross-bill. It is difficult to present a clear and intelligible statement of the facts from the allegations of the cross-bill upon which the preferred stockholders rely for the enforcement of their priority of lien. The material facts upon which they rely seem to be that, under the decrees and sales which took place before the mortgages and deeds of trust which are in controversy here were-executed, Campbell and others became the purchasers of the property, as trustees of creditors and stockholders of the Ohio & Mississippi Company, for the purpose of providing for and protecting claims of judgment creditors and other persons holding liens on the property, and also the interests of the stockholders; that in exchange, and as a payment of the interest of the creditors and stockholders, which it is alleged, were transferred to the trustees and held by them for the purpose aforesaid, they issued their certificate, according to a certain stipulated proportion determined by certain considerations as to priority and right of lien. As a part of this general arrangement which took place in the sale and in the trust created, a reorganization was to be made, from which should spring a new corporation, with the usual powers under the law for operating the road and creating new encumbrances and liabilities; and this arrangement was carried into effect, and in executing the various contracts and ar *38 rangements which were made the preferred stock was issued with the certificates in the form referred to, and these certificates were issued for the certificates issued by the trustees.
Before stating the form of the certificates, we may refer to the mortgages or deeds of trust which are sought to be foreclosed in the original and cross suits. One was executed December 24, 1867, by the railway company to Allen Campbell and J. U. E. Odell. This was on the railway from Cincinnati to East St. Louis, and including the branch to Louisville in a certain contingency; and another deed of trust or mortgage was executed March 25, 1871, by the O. & M. Co. This is called the second mortgage, and recites the lien and priority of $6,800,000 of first mortgage bonds. This last mortgage was made to secure $4,000,000 of bonds. The certificates which were issued to the stockholders were in the following form:
“This is to certify that............is entitled to...... shares of the preferred capital stock of the Ohio & Mississippi Railway Company, of one hundred dollars each, transferable only on the books of said company in the city of New York, in person, or by attorney, on the surrender of this certificate. The preferred stock is to be and remain a first claim upon the property of the corporation after its indebtedness, and the holder thereof shall be entitled to receive from the net earnings of the company seven per cent, per annum, payable semi-annually, and to have such interest paid in full for each and every year before any payment of dividend upon the common stock; and whenever the net earnings of the corporation, which shall be applied in payment of interest on the preferred stock and of dividends on the common stock, shall be more than sufficient to pay both — said interest of seven per cent, on the preferred stock, in full, and seven per cent, dividend upon the common stock for the year in which said net earnings are so applied — then the excess of such net earnings, after such payments, shall be divided upon the preferred and common shares equally, share by share. ”
It is insisted by the preferred stockholders that because of their ownership of stock in this way they severally have a lien *39 and security and first claim upon all the property and franchises of the consolidated railway company which existed at the time of the original issue of such preferred stock, which was in or about the year 1867, next after and subject only to the indebtedness of the $6,000,000 mortgage authorized by the articles of agreement, being the indebtedness created by the mortgage or deed of trust of December 24, 1867, and June 23, 1869, which last mortgage covers only the Louisville branch. Of course, if this claim were well founded it would postpone the payment of all indebtedness under the second mortgage until the claims of the preferred stockholders were satisfied. Both the original and cross-bills of 1876-7 are framed on the assumption that this claim of the preferred bond holders was not well founded, as they each entirely ignore any such claim, and in any payments which have been made by the receiver on the first and second mortgages thia claim of the preferred bond holders has also been disregarded.
It is alleged, on information and belief, that the existence of the preferred stock and of the character of the certificates issued for the same, and that sueh stock was and would always remain secured by a specific lien upon all the property and franchises of the railway company, subject only to the indebtedness created by the first mortgage, were well known to the trustees under the second mortgage, and also to the holders of the bonds issued under the second mortgage; and, in short, to all parties who are claiming their liens to be superior to that of the preferred stockholders. There is not set forth in the cross-bill any substantive act creating a specific lien upon the property in the way of mortgage or deed of trust in favor of the preferred stock, unless the certificates, or some agreements or stipulations which have been made and referred to, should constitute such a lien.
Whether or not, therefore, there was a specific lien must depend upon what actually occurred, and what agreements, stipulations and contracts affecting the property were entered into by parties who had the right to encumber it, and not upon what might have been in the minds of the preferred stockholders at the time these various transactions took place, *40 unless, indeed, their conclusions or inferences are fairly warranted by the acts themselves. It is said in the certificates that the preferred stock was to be and remain a first claim upon the property of the corporation after its indebtedness. The natural inquiry is, what indebtedness does this refer to ? Does it mean the then subsisting indebtedness, or any indebtness which might exist against the corporation, and might be a valid lien against its property, although created after-wards ? The certificates also say that the holder should be entitled to receive from the net earnings of the company 7 per cent., payable semi-annually, and that such interest should be paid before any payment of dividend upon the common stock; and that whenever the net earnings of the corporation which should be applied in payment of interest on the preferred Btock, and to dividends on the common stock, should be more than sufficient to pay both, for the years in which said net earnings are so applied, then the excess of such net earnings after such payments should be divided upon the preferred and common shares equally, share by share. Now, was the object of this to create a specific lien as against all subsequent creditors of the property, and a priority over them, or was it merely an agreement made to indicate the distinction between the preferred and common stockholders, and would it have been, if the former was the intention of the parties, natural that they would have contented themselves merely with a certificate of preferred stock in this form rather than some clear, unmistakable declaration which should constitute an unquestioned lien upon the property as against all subsequent creditors ?
It seems to me that the more natural construction of the certificate, and of all the acts which took place between the company and the stockholders who were thus preferred, was that they were providing a mode by which a preference should be given to particular stockholders over others, and that they did not contemplate that the indebtedness which was referred to, after which theirs was to be a first claim, was the indebtedness only which was then existing against the property. They were to be entitled to 7 per cent, from the net earnings of the company before any payment of divi *41 dend upon the common stock, and when these net earnings, thus applied on the preferred stock and on the common stock, were more than sufficient to pay both, then the excess was to be divided between them equally, both common and preferred. Besides, it seems to me, from the nature of the ease and character of the claim which is here set forth by these preferred stockholders as against other parties claiming and having liens upon the property, that the claim of preferred stockholders should not be allowed in a doubtful case.
The general rule is that stockholders are only to be paid after the claims of other lien holders, and where they come forward and insist upon having a priority of payment over mortgage creditors, a specific lien beyond all doubt should be shown to exist in their favor. If the claim of the preferred stockholders is valid, the second mortgage creditors may well ask when is their debt to be paid. It is only by construction, not very clear or satisfactory, that the claim of the preferred stockholders is sought to be made out in this ease. It is a claim brought forward after long delay, and does not, under the circustances, commend itself very strongly to the equitable consideration of the court. On the whole, therefore, I shall sustain the demurrer to the cross-bill.