SPINKS *v.* ROME GUANO COMPANY, and *vice versa.*

1. An immaterial variance between a guaranteed analysis of a fertilizer which has been sold in this State, and the analysis made by the State chemist of samples of such fertilizer forwarded him by the ordinary under the provisions of the Political Code, §1571, will not render the contract of sale illegal.

2. The variance between the analysis in the present case as to the ingredient complained of being apparently trifling and insignificant, and there being no evidence that such a variance would affect the value of the fertilizer, a verdict in favor of the plaintiff was demanded.

3. The ruling on the admission of evidence which is complained of, even if erroneous, does not in the present case authorize the granting of a new trial.

Argued June 17,—Decided August 1, 1899.

Complaint. Before Judge Janes. Paulding superior court. August term, 1898.

*W. E. Spinks*, for Spinks.     *J. M. Davis*, contra.

COBB, J.  The Rome Guano Company sued Spinks upon a promissory note given for the purchase-price of a commercial fertilizer.  To the action the defendant pleaded that at the time he purchased the fertilizer samples of the same were drawn, in conformity to the Political Code, §§ 1571 et seq., by the agents of the plaintiff, and deposited with the ordinary, who kept the same until the defendant, "seeing the results of said guano on his crops were not satisfactory," made application to the ordinary to have the samples in his possession forwarded to the State chemist for analysis, who reported the result of his analysis to the ordinary, which shows that the fertilizer contains only 1.48 per cent. of potash, when according to the guaranteed analysis it should contain 1.50 per cent. of potash; and that, the last analysis showing that the fertilizer does not "come up" to the guaranteed analysis, the defendant is discharged from liability on the note, by the terms of the law above referred to.  At the trial the plaintiff introduced the note sued on, and closed.  It was agreed that the guaranteed analysis of the fertilizer sold showed its ingredients in the following proportion: Insoluble phosphoric acid, 1 per cent.; available phosphoric acid, 8 per cent.; ammonia, 2 per cent.; potash, 1.50 per cent.  It was further agreed that, in conformity to the provisions of the act of 1890 (Political Code, § 1571 et seq.), samples of the fertilizer sold to defendant were deposited with the ordinary and by him forwarded to the State chemist for analysis, and that the analysis made by him showed the ingredients of the fertilizer to be in the following proportions: Insoluble phosphoric acid, 4.89 per cent.; available phosporic acid, 10.31 per cent.; ammonia, 2.27 per cent.; potash, 1.48 per cent.  The defendant introduced no other evidence, and the plaintiff in rebuttal proved that the commercial value of the fertilizer was as follows: Available phosphoric acid, 3¼ cents per pound; ammonia, 10 cents per pound; potash 4¼ cents per pound.  The jury, under the charge of the court, returned a verdict for the plaintiff.  The

defendant filed a motion for a new trial, which was overruled, and he excepted.

1. It was alleged in the motion for a new trial that the court erred in the following charge: "If the analysis of the State chemist is substantially and in substance the same as the guaranteed analysis, you should find for the plaintiff; otherwise you should find for the defendant." The statute relied upon as a defense in this case provides that the State chemist shall analyze the samples of fertilizer sent to him by the ordinary, and if such analysis shows the "fertilizer does not come up to the guaranteed analysis, then the sale shall be illegal, null, and void," and the report of the State chemist to the ordinary showing the result of his analysis is declared to be conclusive evidence of the facts, whether the note given for the purchase-price of the fertilizer be in the hands of the original payee or an innocent holder. It is contended that under this law any variance between the analysis of the State chemist and the guaranteed analysis, no matter how small and trifling it may be, will have the effect of vitiating the sale. We can not hold that the General Assembly intended anything so harsh, unjust, and unreasonable, unless the words of the statute clearly and unequivocally demand a construction which would have such a result. There is nothing in the statute which imperatively demands such a construction. The words "come up" to the guaranteed analysis do not necessarily require that the two analyses shall agree exactly in all particulars. If the two analyses show results substantially the same, the reason and spirit of the law is complied with. That such is a proper interpretation to be placed upon the words of this statute becomes apparent when attention is called to the fact that all fertilizers sold in this State are sold under a guaranteed analysis, which is declared by law to be simply a guarantee that it contains "substantially the ingredients indicated thereby." Political Code, § 1552. This was the guaranty which the defendant in the present case had from his seller, and the act of 1890 under which he acted simply provides a method of determining whether the seller has complied with the guaranty that the law requires, that is, that the article sold is substantially the same

as the article indicated in the guaranteed analysis. There was no error in the charge complained of.

2, 3. The defendant objected to the evidence offered by the plaintiff to show the commercial value of the different ingredients of the fertilizer, on the ground that such evidence was irrelevant. The purpose of the evidence was to show that the defendant was not damaged by the failure of the fertilizer to contain the required percentage of potash, because there was more of the more valuable ingredients than the guaranteed analysis required, and that therefore the fertilizer as a whole was commercially of greater value than it would have been had it contained simply the ingredients required by the guaranteed analysis. Whether in any case it would be permissible to allow the seller to overcome the deficiency in one ingredient by showing a superabundance of another and more valuable ingredient is not necessary to be now decided, as such evidence in the present case could not have possibly injured the defendant. The whole defense rested upon the contention that the two analyses must be exactly the same as to the ingredient potash, there being no complaint whatever as to the other ingredients. The variance between the analyses as to the amount of potash contained in the fertilizer being insubstantial, a verdict for the plaintiff was demanded by the evidence. Even if the evidence objected to was inadmissible, its exclusion could not possibly have changed the result, as the variance between the two analyses was apparently trifling and insignificant, and there was no evidence that the variance would in any manner affect the value of the fertilizer; and hence a verdict that there was no substantial variance between the two analyses was demanded by the evidence. There was no error in refusing to grant a new trial.

*Judgment on main bill of exceptions affirmed; cross-bill dismissed. All the Justices concurring.*