EQUITABLE TRUST CO. OF NEW YORK v. UNITED BOX BOARD &
PAPER CO. et al.

(District Court, D. New Jersey. February 19, 1915.)

1. CORPORATIONS ⬮⟾579—REORGANIZATION—LIABILITY FOR DEBTS—MORT-
GAGES.

A corporation conveyed its property to a trustee to secure an issue of·
general mortgage bonds, of which a part were to be held by the trus-
tee and authenticated and delivered when sold by the mortgagor, the pro-
ceeds to be used to pay off prior liens. The mortgage provided for the
release of parts of the mortgaged premises under certain circumstances,
and provided that all covenants therein should bind the corporation's suc-
cessors and assigns. The corporation became insolvent, and its property
was sold, subject to outstanding mortgages, at receiver's sales, to a re-
organized corporation with the same stockholders, on the terms and con-
ditions contained in a bid, which described the property for which the
bid was made as including all bonds of the old corporation in the hands
of creditors as collateral or in its treasury, or in the hands of the trus-
tee under its general mortgage or a collateral trust mortgage, with all
rights with respect thereto or with respect to any property of the cor-
poration. It assumed the old corporation's outstanding debts and lia-
bilities, not including bonds, debts, or obligations secured by real estate
mortgages or the collateral trust mortgage. It subsequently obtained
from the trustee a release of certain parts of the mortgaged premises
pursuant to the provisions of the mortgage, and obtained from the trus-
tee general mortgage bonds retained by it to pay off prior liens, and ap-
plied the proceeds to such liens. The trustee authenticated and deliv-
ered such bonds only after the court, on application of the new corpora-
tion, had authorized it to do so. Held that, though the new corporation
became the mortgagor's successor in title to the mortgaged premises, it
did not become liable for any deficiency in the mortgage debt upon a fore-
closure sale, since it became the mortgagor's successor by virtue of a ju-
dicial sale, and not by virtue of the mortgage, or in pursuance of any
rights thereunder, and, though it took title subject to the mortgage, it
was bound only by such covenants therein as ran with the land, while the
obligation to pay the debt was a covenant in personam, and not one
running with the land.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2307, 2309,
2313–2318; Dec. Dig. ⬮⟾579.]

2. CORPORATIONS ⬮⟾579 — REORGANIZATION — LIABILITY FOR DEBTS — MORT-
GAGES.

The new corporation, by exercising the right under the mortgage to
have the bonds in the hands of the trustee authenticated and delivered,
did not become liable for a deficiency upon a foreclosure of the mortgage,
either to the holders of bonds previously issued or to the holders of those
which it procured to be issued, as, though the methods employed in exe-
cuting and authenticating the bonds were steps conforming to the mort-
gage, they did not amount to an assumption of the bonds, and were but
steps to secure to the new corporation a part of what it had purchased,
and, moreover, the holders of the bonds previously issued had an oppor-
tunity in the receivership action to express their views on the advisa-
bility of a sale on the terms of the bid, while those purchasing the bonds
subsequently issued presumably purchased with full knowledge of the
terms and conditions of the mortgage; the bonds not being issued in the
name of the new corporation, but in that of the old corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2307, 2309,
2313–2318; Dec. Dig. ⬮⟾579.]

In Equity. Suit by the Equitable Trust Company of New York,
trustee, against the United Box Board & Paper Company and another,

to foreclose a mortgage, with a prayer for a decree for deficiency against the present owner of the mortgaged premises, as well as against the mortgagor.   Prayer denied.

Murray, Prentice & Howland, of New York City (George Welwood Murray and Vance Hewitt, both of New York City, of counsel), for complainant.

Riker & Riker, of Newark, N. J. (James Todd, of Chicago, Ill., of counsel), for defendant United Boxboard Co.

RELLSTAB, District Judge.   The question to be decided is whether the United Boxboard Company (not the mortgagor), who was the owner of the mortgaged premises at the filing of the bill of complaint, is liable for the deficiency, or any part of it, which resulted on the foreclosure sale of such premises.

The defendant United Box Board & Paper Company (hereafter called the mortgagor), on the 22d day of December, 1905, conveyed its property to a trustee as security for an authorized issue of general mortgage bonds, not to exceed $2,750,000 face value,

"for the purpose of raising money to purchase and pay for its mortgage bonds theretofore outstanding, and to provide for and pay off liens then upon the property of the said company, and for its other corporate purposes."

By the terms of the mortgage all of these bonds were to be executed and delivered by the mortgagor to such trustee.   $1,750,000 thereof were to be authenticated and delivered by the trustee to the mortgagor without further direction.   The remainder were to be held by the trustee, to be authenticated and delivered by it when sold by the mortgagor, in which event the trustee was to use the proceeds thereof, on the order of the mortgagor, to pay off liens upon the mortgaged property prior to the lien of such general mortgage.   Only $1,750,000 of such bonds were executed by the mortgagor and authenticated and issued by the trustee while the mortgagor was the owner of the mortgaged premises.   The mortgagor covenanted to pay the principal and interest to become due upon the bonds when so issued.   The mortgage provided for the release of parts of the mortgaged premises under certain circumstances and on compliance with certain conditions therein stated, and also that all the covenants and promises contained therein—

"by or on behalf of the company [mortgagor] shall bind, its successors and assigns, whether so expressed or not."

The mortgagor became insolvent, and on application of a creditor a receiver was appointed by the Court of Chancery of New Jersey, and ancillary receivers by federal and state courts of the several jurisdictions where the mortgaged properties of the mortgagor were located. Such properties were subsequently sold by such receivers to the defendant the United Boxboard Company, pursuant to a decree made by said New Jersey Court of Chancery, upon the terms and conditions contained in the bid made by a reorganization committee of the stockholders of said mortgagor; said last-named company (hereafter called the purchaser) having been incorporated for the purpose of taking over and operating said mortgaged premises.   The property thus bid for by such committee, and which was conveyed to such purchaser, included—

"all bonds of the United Box Board & Paper Company in the hands of creditors as collateral, or in its treasury, or in the hands of trustee under its general mortgage subject to the provisions thereof, or in the hands of the trustee under its collateral trust mortgage, subject to the provisions thereof, with all the rights, powers, and privileges with respect to said bonds, and the certification, disposition, or use thereof, which said United Box Board & Paper Company was given or had, and also all and every the rights, powers, and privileges with respect or belonging to said assets and property, real and personal, respectively, and every or any part or portion thereof, which said United Box Board & Paper Company had, held, or possessed, or to which it was entitled."

As a part of the consideration for such conveyance the purchaser assumed and agreed to pay the outstanding debts and liabilities of the mortgagor,

"not including bonds, debts, or obligations of said United Box Board & Paper Company, or of its grantors or of prior owners, which are secured by mortgage or mortgages upon real estate, and not including bonds or obligations secured by the collateral trust mortgage or deed of said United Box Board & Paper Company to the Trust Company of America, bearing date December 22, 1905, or the liability or obligations of said United Box Board & Paper Company upon any said bonds or mortgages."

The said bid also set forth:

"That with respect to such parts, parcels, and portions of said assets and property as at the time of the appointment of the said receivers as aforesaid were and at the time such sale shall be subject to valid mortgage or pledge, securing indebtedness not so included as aforesaid, such sale and purchase shall be subject to such valid mortgage or pledge."

This bid also provided:

"It is also a condition of this offer that the United Box Board & Paper Company shall, under the proper authority, direction, order, and decree of the court, make, execute, and deliver to us or to our appointee good and sufficient conveyances, deeds, and instruments of transfer of the assets and property comprised in this offer as we may require."

After appropriate proceedings, this bid was, on February 19, 1909, approved by the New Jersey Court of Chancery (the court of primary jurisdiction), and the property thus bid for, with some exceptions, which, however, in no way affect the question here presented, was shortly thereafter conveyed to the said purchaser. Subsequently said purchaser exercised certain of the rights secured to such mortgagor in said general mortgage, in the following particulars: It obtained a release from the trustee of certain parts of the mortgaged premises. It obtained from the trustee $120,000, face value, of such general mortgage bonds retained by the trustee to pay off liens which were prior in date to said general mortgage, which bonds were sold and the proceeds thereof applied to pay off and reduce liens of such character. By a mortgage covering other properties, it gave additional security for the payment of the bonds then outstanding or that might thereafter be issued under said general mortgage, and also by it secured "the performance of all of the obligations of the United Box Board & Paper Company and its successors in said mortgage contained, upon all of the terms, conditions, and trusts in said mortgage contained, as fully to all intents and purposes as if said property had been in the ownership of the said United Box Board & Paper Company at the time of

the delivery of said mortgage and had been therein described, subject, however, to the lien of a certain mortgage" therein specifically mentioned.

On these facts the complainant contends, first, that the purchaser is a "successor or assign within the meaning of the mortgage, and is therefore liable for the obligations of the mortgagor company"; and, if that be untenable, second, that the purchaser became such a successor or assign by the order of the state Court of Chancery, empowering it to avail itself of the terms of the mortgage in relation to said issue of $120,000 of bonds, and became, by its "exercise of other privileges and rights which were peculiarly within the power of the mortgagor, its 'successor and assign.'"

The purchaser's contention is that it made such purchase on the express condition that it should not be liable for the mortgagor's bonded indebtedness secured by such general mortgage, whether the bonds had then actually been issued or were thereafter to be issued according to the terms of such mortgage.

[1] As to the first contention: The purchaser undoubtedly became the successor in title to the mortgaged premises; but it became so not by virtue of the mortgage or in pursuance of any rights created thereby or preserved therein. It became such through a judicial sale ordered by a competent court in a cause wherein the mortgagee was not an actual or necessary party. Such mortgagee was a stranger to such contract of purchase and the consideration which supported it. The purchaser bid for and obtained all the mortgagor owned in such property. It took title subject to such mortgage, but it was bound only by such covenants therein which ran with the land. The mortgagor by such sale obtained no indemnity against the mortgage debt. It continued, as it began, the primary and sole debtor on said bonds. The bid for such property expressly excepted and disavowed any liability on account of the bonds issued or to be issued, for the payment of which such mortgage was given as security, and the judicial order authorizing the acceptance of such bid expressly countenanced such disclaimer. The obligation of the mortgagor to pay said bonds, principal and interest, was not a covenant running with the land, but one in personam. Glenn v. Canby, 24 Md. 127. See, also, Farmers' Loan & Trust Co. v. Penn Plate-Glass Co. et al., 103 Fed. 132, 43 C. C. A. 114, 56 L. R. A. 710, affirmed 186 U. S. 434, 22 Sup. Ct. 842, 46 L. Ed. 1234. And the parties to such mortgage could not, by its terms, impose such an obligation on a purchaser who subsequently obtained the title to the mortgaged premises, not through a contract made with the mortgagor, but through a judicial sale as stated.

The purchaser, though its stockholders were the same as those of the mortgagor, was entirely new and distinct. The property taken over was not obtained as the result of a consolidation or merger of other companies, but was property purchased at a judicial sale; and the purchaser became a successor of the mortgagor, not by reason of any right derived from it or said mortgage, but as any stranger would under a judicial sale. In such circumstances, no privity exists between the purchaser and the mortgagor or mortgagee as concerns mere personal covenants contained in such mortgage. The right of the mort-

gagee to enforce payment of the mortgage debt against such premises and to enforce the personal covenants of the mortgagor was unaffected by such sale. Its rights were only those that could be found in such mortgage, and as the purchaser derived its estate through other means, not in any way dependent upon such mortgage or the volition of the mortgagor, it cannot by reason of anything in said mortgage be bound to pay any deficit on said bonds arising after sale of the mortgaged premises. The complainant's first contention in this respect is untenable.

[2] As to the second contention: The asserted liability under this contention, as already noted, depends upon the conduct of the purchaser subsequently to its purchase of the mortgaged premises. Of such conduct, that relating to the issue of $120,000, face value, of the general mortgage bonds is deemed by the complainant the most significant and controlling as to such contention. As to such issue of bonds, the purchaser applied to the trustee to authenticate and deliver the same to it, asserting its right thereto under the terms of its purchase of said property. The trustee refused to do this, because they had not been executed by the mortgagor as the mortgage required, and because it would not take the risk of determining the status of the purchaser with respect to such unexecuted bonds. After some negotiations, the purchaser petitioned the Court of Chancery of New Jersey for an order requiring their execution, authentication, and delivery. In its petition in that behalf it recited that both it and the said reorganization committee supposed that all the general mortgage bonds had been executed and delivered by the mortgagor to the trustee, but that it had recently learned that $1,000,000, face value, of such bonds had not been so executed and delivered; that under the terms of its bid and the order of its acceptance by the court it had—

"acquired the right to have said bonds, and each of them, executed by the said defendant United Box Board & Paper Company, and delivered to the said trustee pursuant to the terms of the said respective mortgages."

Subsequently said court ordered that the proper officers of the mortgagor execute such bonds and deliver the same to said trustee—

"subject to certification upon the demand of the said petitioner, the United Boxboard Company, in accordance with the terms of the said respective mortgages and deeds of trust, and that for this purpose the injunction heretofore ordered in the above-stated cause is modified."

Certainly there is nothing in the original bid, pursuant to which the purchaser became the owner of the mortgaged premises, nor in the order of the court authorizing the acceptance of such bid, nor in the deed evidencing such purchase, nor in the application to such court seeking its aid to secure the execution of the unexecuted bonds, nor in the order by the court directing that such bonds be executed and authenticated as aforesaid, which made the purchaser liable for the bonds secured by such general mortgage. The negotiations leading to the purchase of the mortgaged premises and the order authorizing it expressly exclude any such liability; and the subsequent application and order of court founded thereon to obtain the execution and delivery of the bonds that had not then been issued were but steps to secure to the

purchaser a part of what it had purchased; and while the methods employed in executing and authenticating such bonds for future delivery were steps conforming to the mortgage requirements to achieve that result, these steps, although a recognition of such mortgage and its terms in that regard, were not intended and cannot be construed to create an assumption on the part of the purchaser to pay either the bonds then outstanding or yet to be issued. The holders of the bonds outstanding at the time the court authorized the sale to the purchaser, as well as the unsecured creditors of the mortgagor, had notice of such offer for the property, and that the court on a day named would determine whether it should be accepted, and they are therefore presumed to have had knowledge that the would-be purchaser had expressly stipulated that it would assume no personal liability for the payment of such bonds. Whether it was to the interest of such bondholders that the sale should be made upon the terms proposed in such bid is not now an open question. They had their opportunity to express their views upon that subject, and they are bound by the terms of such purchase. The subsequent issuing of $120,000 worth of bonds and the releasing of parts of such mortgaged premises were acts contemplated by such mortgage; and that such rights or privileges were enforced at the instance of the purchaser creates no assumption on its part of personal liability for the indebtedness secured by such mortgage. So far as the old bondholders are concerned, they have neither a contractual nor an equitable right to the decree for deficiency prayed.

The holders of the $120,000 worth of bonds, so far as this proceeding is concerned, stand in no better position. In the absence of anything to the contrary, the presumption is that the holders of such bonds purchased them with full knowledge of the terms and conditions of the mortgage given to secure them. These bonds were not issued in the name of the purchaser, but in the name of the mortgagor, and were a part of the obligations contemplated and secured by the general mortgage, and whatever benefits the purchaser may have derived from the exercise of the privileges contained in such mortgage were only such as it bargained for and obtained in its said purchase. So far as the present proceedings are concerned, no decree for deficiency can be made for the benefit of one set of bondholders, and not for the other. The counsel for the complainant concedes this, stating in that regard that:

"A partial right or partial liability is not within the contemplation of the mortgage."

If there is any liability on the part of the purchaser for the payment of any or all of this $120,000 issue of bonds, it is a liability that does not grow out of any of the steps alleged and relied upon in this proceeding.

Northern Pacific Railway Co. v. Boyd, 228 U. S. 482, 33 Sup. Ct. 554, 57 L. Ed. 931, mainly relied upon by the complainant, is not opposed to the view herein expressed. In that case the suit was to make the property taken over pursuant to a reorganization scheme subject to a judgment obtained against a former owner of a part of such property, and, so far as pertinent to the present inquiry, it was held that a sale of the properties of an insolvent railway company,

made to another company organized by the shareholders and bondholders of the insolvent company, in pursuance of a reorganization scheme entered into between such share and bondholders, and which made no provision for creditors other than such bondholders, was not binding upon a nonassenting creditor of such insolvent company not a bondholder, and that the property thus conveyed was subject to a judgment obtained by such nonassenting creditor. In the instant case, however, the reorganization plan included all the unsecured creditors and took over the property of the insolvent corporation subject to the mortgage thereon, upon the express condition that no personal liability for the debt secured by such mortgage was assumed by the purchaser.

The prayer for a decree that the defendant the United Boxboard Company pay the deficiency resulting from the foreclosure sale of the mortgaged premises in question is denied, with costs.