Augusta Trust Company

*vs.*

Augusta, Hallowell & Gardiner Railroad Co., et als.

and

Henry Lewis, et als.

*vs.*

Augusta, Winthrop & Gardiner Railway

Androscoggin & Kennebec Railway

Augusta Trust Co., and Augusta Trust Co., Trustee.

Kennebec.      Opinion, August 11, 1936.

*Walter M. Sanborn,*
*Robert B. Williamson,* for August Trust Company.
*Skelton & Mahon,* for Androscoggin & Kennebec Railroad Co.
*Sewall C. Strout,*
*Charles E. Gurney,* for Henry Lewis, et als.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

STURGIS, J. These causes, consolidated and tried together, come forward on appeals from the decrees of a single Justice of the Supreme Judicial Court sitting in equity. Interlocutory decrees already entered, and stipulations on file or noted on the briefs, dispose of numerous issues raised by the pleadings and pressed at the hearing below. As the cases are presented, the decrees below may be affirmed except as to rulings directly attacked on this review and argued on the briefs.

The Augusta Trust Company, a banking corporation located in Augusta, Maine, is the Trustee named in the General Convertible Mortgage which the Augusta, Hallowell & Gardiner Railroad Co., a street railway corporation formerly furnishing transportation service in and between the cities represented in its name, gave on June 18, 1901, to secure its issue of serial coupon bonds maturing July 1, 1951, and amounting in the aggregate to two hundred and fifty thousand ($250,000) dollars, of which bonds of the par value of fifty-five thousand ($55,000) dollars are outstanding, together with preferred stock in the amount of one hundred and ninety-five thousand ($195,000) dollars which was issued in exchange for the bonds in accordance with the terms of the mortgage, which gave to the holders of the bonds the right and privilege of converting the same into preferred stock of the Company secured under the mortgage both as to principal and dividends equally and ratably with

the bonds. Both the bonds and preferred stock were callable on or after July 1, 1911, and redeemable at par on July 1, 1951, with accrued interest and dividends thereon. All the franchises, lands, incomes, revenues and other property of every kind then owned or thereafter acquired by the Company were included in the conveyance to the Trustee and subjected to the lien of the mortgage.

The bonds issued under this mortgage each contained the following provision:

"The holder of this bond has the right at any time to convert the same into the preferred stock of the Augusta, Hallowell and Gardiner Railroad Company by surrender hereof to the Treasurer of said Company for cancellation and exchange. Said preferred stock is two hundred and fifty thousand dollars in amount, in shares of one hundred dollars each, with agreed dividends of four per cent per annum, payable semi-annually, on the first days of January and July, callable in like manner as this bond, to be redeemed on July 1, A. D. 1951, and the payment of said dividends and the redemption of said stock at maturity, or on default, are equally and ratably secured by said trust mortgage and equally and ratably with the bonds and coupons secured thereunder."

The certificates of preferred stock by the same authority each bore on its face the inscription,

"This stock is part of an issue limited to two hundred and fifty thousand dollars par value. The holder is entitled to receive and the Company is bound to pay hereon a fixed yearly dividend of four per centum, payable half-yearly on January 1 and July 1. This share is redeemable on or after July 1, 1911, at 104 and accrued interest, and will be redeemed at par on July 1, 1951. The payment of principal and dividends is equally and ratably secured by a trust mortgage to the Augusta Trust Company, Trustee, duly recorded in the County of Kennebec."

and on the back a certificate that the stock was issued in exchange for an equal amount of principal of the bonds and was equally and ratably secured with the bonds by the mortgage.

By authority of a vote of its stockholders at a meeting held on April 5, 1902, the Augusta, Hallowell & Gardiner Railroad Co. conveyed all its properties, rights, privileges and franchises to the Augusta, Winthrop & Gardiner Railway, a street railway corporation operating in the same or adjoining territories, which assumed the payment and satisfaction of all debts, contracts and liabilities of the old Company..

The Augusta, Winthrop & Gardiner Railway, on May 10, 1902, named the Augusta Trust Company as Trustee in its convertible first mortgage for one hundred and fifty thousand ($150,000) dollars given to secure an issue of bonds of like aggregate amount which were payable July 1, 1952, and convertible into preferred stock of the Corporation at the option of the holder on substantially the same terms and conditions as those appearing in the Augusta, Hallowell & Gardiner Railroad Co. mortgage already described in detail, which remained a senior incumbrance on the common properties included in the two mortgages. The record shows that bonds to the amount of ninety-five thousand ($95,000) dollars originally issued under this mortgage were finally converted into preferred stock, leaving bonds of the par value of fifty-five thousand ($50,000) dollars now outstanding. For the purposes of this opinion, all outstanding bonds and preferred stock issued under this mortgage may be treated as subject to the conversion privileges and provisions appearing in the general convertible mortgage of the Augusta, Hallowell & Gardiner Railroad Co. already herein described with quotations from the original text.

On February 1, 1905, the Augusta, Winthrop & Gardiner Railway, to secure another bond issue of one hundred and twenty-five thousand ($125,000) dollars, placed a second mortgage on all its properties subject, however, to the existing liens of the underlying mortgages already described. These bonds, of which one hundred thousand ($100,000) dollars remain outstanding, were payable January 1, 1935, and are in default. The Augusta Trust Company is also the Trustee named in this mortgage.

On or about April 27, 1907, the Lewiston, Augusta & Waterville Street Railway, under legislative authority acquired the consolidated properties, franchises and rights of the Augusta, Winthrop & Gardiner Railway and thereafter owned and operated the same

until, by decree of the Supreme Judicial Court in foreclosure proceedings begun on or about December 16, 1918, all its properties, rights and operating franchises were sold to a new corporation organized by the bondholders under Chapter 57 of the Revised Statutes (1916) and known as the Androscoggin & Kennebec Railway Company. By the terms of this sale, the properties covered by the mortgages of the Augusta, Hallowell & Gardiner Railroad Co. and the Augusta, Winthrop & Gardiner Railway were made subject to any valid and subsisting prior liens or legal or equitable interests therein, but without adjudication of the number, nature, validity or extent of the same or the rights of any person making claim thereto. It does not appear that there was any express provision in this decree or in the conveyance made pursuant thereto that the purchaser, the Androscoggin & Kennebec Railway Company, should assume the payment of any of the debts of the Lewiston, Augusta & Waterville Street Railway or any of its predecessors in title.

The Androscoggin & Kennebec Railway Company, for a time, operated the railway system it acquired under this foreclosure sale and until July 1, 1931, paid all coupons and dividends as they matured on the bonds and preferred stock issued under the several mortgages still incumbering their properties. On July 31, 1932, by authority of the Public Utilities Commission of Maine, the street railway systems originally operated by the Augusta, Hallowell & Gardiner Railroad Co., and later by the Augusta, Winthrop & Gardiner Railway, were abandoned. Part of the physical properties was sold and part of the proceeds deposited with the Augusta Trust Company as Trustee. Arrangements have been made for the deposit of the balance of the proceeds received from such sales but not paid over. At an earlier stage of these proceedings, foreclosure of the general convertible mortgage given by the Augusta, Hallowell & Gardiner Railroad Co. was ordered, and the Receiver, then appointed, has taken possession of the remaining assets and sold all or part under order of the Court.

The action of *Augusta Trust Company* v. *Augusta, Hallowell & Gardiner Railroad Co., et als.*, is brought primarily to foreclose the several mortgages given by the Augusta, Hallowell & Gardiner Railroad Co. and by the Augusta, Winthrop & Gardiner Railway.

The bill contains prayers for special relief in the form of instructions as to the proper disposition of the proceeds of the mortgaged properties and, upon allegations that the same will be substantially less than the amount remaining due upon the bonds and preferred stock issued under the mortgages and equitably the Androscoggin & Kennebec Railway Company is liable therefor, that judgment be entered against that Company for such deficiencies. The Androscoggin & Kennebec Railway Company, in its answer, denies liability for any part of the debts secured by these mortgages, and is concerned only in this issue on this review. Intervening bondholders, appearing in person and through a committee, deny the right of the owners of preferred stock to share equally and ratably in the security of the mortgages.

In *Henry Lewis, et al.* v. *Augusta, Winthrop & Gardiner Railway, et als.*, the complainants, as individual owners and as a Committee of the Bondholders, bring their bill specifically for the foreclosure of the convertible first mortgage of May 10, 1902, given by the Augusta, Winthrop & Gardiner Railway, and pray judgment against the Androscoggin & Kennebec Railway Company for any deficiency in the payment of the amount due upon their bonds resulting from such foreclosure. These complainants also deny the right of the holders of the preferred stock to share equally and ratably with the bondholders in the proceeds of the property covered by this mortgage. The issues raised in this proceeding having been already presented in *Augusta Trust Company* v. *Augusta, Hallowell & Gardiner Railroad Co., et als.*, the actions were consolidated and heard together, and a decree entered accordingly. The sitting Justice, after hearing, found and ruled that,

(1) The holders of the preferred stock issued and outstanding in exchange for bonds under the general convertible mortgage of July 18, 1901, executed by the Augusta, Hallowell & Gardiner Railroad Co. and under the convertible first mortgage of May 10, 1902, executed by the Augusta, Winthrop & Gardiner Railway are entitled to

"share ratably with the holders of bonds issued and outstanding under said indentures in the benefits of their respective mortgages."

(2) The Androscoggin & Kennebec Railway Company has not assumed and is not liable for the debts secured by either of these mortgage indentures.

(3) As against the Androscoggin & Kennebec Railway Company, the Bill of Complaint of *Henry Lewis, et al.* v. *Augusta, Winthrop & Gardiner Railway, et als.*, is dismissed.

On these appeals, arguments are directed solely to these rulings. Other objections to the decree ι re now waived.

No question is raised, nor can be, as to the power of the street railway companies here involved to issue bonds secured by mortgages of their corporate properties and franchises within the limitations and for the purposes specified in their charters or elsewhere in the general statutes. Were express authority lacking, it is universally recognized that, in the absence of express or implied prohibition or restriction upon this power in its charter or other statute, a corporation has the implied power to issue bonds for any purpose for which it may lawfully borrow money or contract a debt, and special authority to that effect is unnecessary. Fletcher Cyc. Corp., Perm. Ed., Sec. 2650; 14-A C. J., 612 and cases cited.

Nor is the validity of these bonds impaired by the conversion agreements written into them permitting the holders to exchange them for preferred stock of the companies. Such an agreement for conversion, although appearing on the face of the bonds, is in fact a separate independent agreement and no part of the bonds proper. Its presence does not affect their negotiability and its invalidity would not impair the liability of the obligors to discharge the debts. The agreement "gains nothing in force by reason of its association with the stipulation of the bond. It must be construed as though embodied in a separate writing." *Lisman* v. *Milwaukee L. S. & W. Ry. Co.*, 161 Fed., 472; *Wood* v. *Whelen*, 93 Ill., 153; Fletcher Cyc. Corp., *supra*, Sec. 2693. We see no reason for giving a different construction to the conversion agreements because incorporated into the mortgage indentures.

Nor is there doubt as to the right of the street railway companies to increase their capital stock by issuing preferred stock in the strict sense of that term as known generally in corporation finance and law. The issues were duly authorized by votes of the stockhold-

ers under the general law then in force. Chapter 229, Public Laws 1901. This statutory authority, however, was general in its terms and did not, expressly nor impliedly, confer power upon corporations to issue preferred stock guaranteed both as to principal and dividends and secured by a lien upon the property of the corporation. The well-settled rule is that, in the absence of clear and express statutory authority therefor, preferred stockholders as such are not creditors of the corporation and can not be made so to the prejudice of actual creditors. Agreements made to accomplish this result without legislative sanction are against public policy and therefore illegal and void.

In *Spear* v. *Rockland-Rockport Lime Co.*, 113 Me., 285, 93 A., 754, 756, Savage, C. J., stating the opinion of the Court said:

"A preferred stockholder is not a creditor. He is a stockholder, although his peculiar rights arise from contract. He is a stockholder as to creditors in general, and his rights are subordinate to theirs. He cannot claim dividends out of funds that are needed for, or that properly should be applied to, the payment of debts. . . .

"Stockholders, even preferred stockholders, can have no priority over creditors." See *Belfast & M. Lake R. R. Co* v. *Belfast,* 77 Me., 445, 1 A., 362.

In *Warren* v. *Queen & Co.*, 240 Pa., 154, 87 A., 595, 597, after holding that the Act of April 28, 1873, P. L. 79, of that state did not authorize the preferred stockholder of a corporation to enforce payment of his stock in preference to the claims of creditors, that Court said:

"Aside from the Act of 1873, it would be against public policy to permit a preferred stockholder to assert his claim as such against the funds of a corporation in preference to the claims of creditors. The stock of a corporation is its capital, and is responsive to the claims of its creditors. It is held in trust for the payment of the indebtedness of the corporation. The relation of a stockholder and a creditor to a corporation is not at all alike, but entirely different. A certificate of stock does not make the holder a creditor as well as a stockholder.

A stockholder cannot be both a creditor and a debtor by virtue of his ownership of stock: *Warren* v. *King*, 108 U. S., 389, 399. The stock is part of the capital of the corporation which the holder cannot withdraw until its indebtedness is paid. The preferred stockholder is but a stockholder with a right to have his dividend paid before dividends on the common stock are paid, and he is not entitled to any dividend until the corporation has funds which are properly applicable to the payment of dividends: 1 Cook on Corp., Sec. 271. He has the right to the dividends on his shares to the extent authorized by his certificate in preference to the holder of common stock, but beyond this he has no right superior to the holder of common stock, and both hold their stock subject to the payment of the indebtedness of the corporation. This is the settled rule recognized in all jurisdictions. A corporation has no right to make any rules by which the holder of stock, common or preferred, may be preferred in the liquidation of its assets over the creditors of the company."

In *Hamlin* v. *Toledo, St. L. & K. C. R. Co.*, 78 Fed., 664, 670, Lurton, J., says:

"There is a wide difference between the relation of a creditor and a stockholder to the corporate property. One cannot well be a creditor as respects creditors proper, and a stockholder by virtue of a certificate evidencing his contribution to the capital of the corporation. Stock is capital, and a stock certificate but evidences that the holder has ventured his means as a part of the capital. It is a fixed characteristic of capital stock that no part of it can be withdrawn for the purpose of reimbursing the principal of the capital stock until the debts of the corporation are paid. These principles are elementary. . . . The chance of gain throws on the stockholder, as respects creditors, the entire risk of the loss of his contribution to capital. 'He cannot be both a creditor and debtor by virtue of his ownership of stock.' *Warren* v. *King*, supra. If the purpose in providing for these peculiar shares was to arrange matters so that under any circumstances a part of the principal of the stock might be withdrawn before the full discharge of all

corporate debts, the device would be contrary to the nature of capital stock, opposed to public policy and void as to creditors affected thereby."

In Cook on Corporations (8th Ed.), Sec. 271, the author states the rule in this language:

"Formerly it was a matter of doubt and discussion whether or not a preferred stockholder had any rights as a creditor of the company or was confined to his rights as a stockholder. The law is now clearly settled that a preferred stockholder is not a corporate creditor. . . . A contract that dividends shall be paid on the preferred stock whether any profits are made or not would be contrary to public policy and void. An agreement to pay dividends absolutely and at all events—from the profits when there are any and from the capital when there are not—is an undertaking that is contrary to law and is void. Public policy condemns with emphasis any such undertaking on the part of a corporation as to its preferred or guaranteed stock. . . . An agreement of a corporation to pay the preferred stockholders before corporate creditors are paid is void. . . .

"Occasionally a mortgage is given by the corporation to secure the payment of dividends on preferred stock and to give it a preference in payment over subsequent debts of the corporation upon insolvency or dissolution. It is difficult to see how such a mortgage would be legal unless it has been issued under express statutory authority. The courts have no power to give the stockholders a preference over creditors, even though the preferred stock is by its terms to be a lien on the property. . . . A mortgage to secure preferred stockholders may be good as to common stockholders but not as to subsequent corporate creditors. A mortgage given to secure preferred stock, while not valid as against corporate creditors, may be valid in the distribution of the assets after creditors are paid."

Among the many other authorities supporting the rule as stated, are *King* v. *Ohio & M. Ry.*, 2 Fed., 36, aff'd. in *Warren* v. *King*, 108 U. S., 389; *Continental Trust Co.* v. *Toledo, etc. R. Co.*, 72 Fed., 92; *Spencer* v. *Smith*, 201 Fed., 647; *Reagan* v. *First Na-*

*tional Bank,* 157 Ind., 623, 61 N. E., 575, 62 N. E., 701; *Cass* v. *Realty, etc., Co.,* 132 N. Y. S., 1074; *Hewitt* v. *Linnhaven, etc., Co.,* 90 Ore.; 1, 174 Pac., 616. See Fletcher Cyc. Corp., *supra,* Sec. 6290; Note, 29 A. L. R., 258; 14 Corpus Juris, 416, 423; 7 Ruling Case Law, Section 171.

As recognized in the authorities cited, it is within the power of the legislature, by charter or statute, to prescribe that corporations may issue certificates in the form of certificates of preferred stock, so-called, making the holders creditors of the corporation as well as stockholders, and giving them a lien upon the property of the corporation with a priority over other creditors. Cook on Corp. (8th Ed.), Sec. 271; Fletcher Cyc. Corp., *supra,* Sec. 5291. It is held, however, that a statute conferring this extraordinary power upon corporations must be clear and definite in its terms. *Kinston Cotton Mills* v. *Wachovia Bank & Trust Co.,* 185 N. C., 7, 115 S. E., 883. And of such preferred stock it is said that it is not ordinary preferred stock, nor technically is it preferred stock at all. It is *sui generis,* not governed by the ordinary rules, but by the provisions of the statutes by which it is authorized. *Heller* v. *National Marine Bank,* 89 Md., 602, 43 A., 800. Suffice it to say that the preferences given the holders of the preferred stock in the conversion agreements here in controversy were not authorized by statute when made. The stock was not statutory preferred stock of the kind just described.

The argument is advanced that the certificates of preferred stock issued in exchange for bonds were in fact certificates of indebtedness and not stock. We can not concur in this view. It is true that preferred stock, so-called, may be issued in such a way and under such terms as to make the certificates thereof merely evidence of indebtedness and the holders creditors of the corporation and not stockholders. *Hazel Atlas Glass Co.* v. *Van Dyk & Reeves, Inc.,* 8 Fed. (2d), 716; *Armstrong* v. *Union Trust & Savings Bank,* 248 Fed., 268; *Savannah Real Estate, Loan & Building Co.* v. *Silverberg,* 108 Ga., 281, 33 S. E., 906; *Heller* v. *National Marine Bank,* supra; *Burt* v. *Rattle,* 31 Ohio St., 116; *Best* v. *Oklahoma Mill Co.,* 124 Okla., 135, 253 P., 1005; Fletcher Cyc. Corp., *supra,* Sec. 5294; 14 Corpus Juris, 416 and cases cited. Here, all facts and circumstances convincingly characterize the

preferred stock issued by the street railway companies as preferred stock. In each instance, the stockholders voted increases in the capital stock by the creation of preferred stock. The certificates delivered to the holders of the bonds exchanged therefor designated the stock as preferred stock and certified that the holders were entitled to the number of shares therein enumerated in the "full paid preferred capital stock" of the companies. The holders of this stock had a right to vote in the election of directors and were entitled to receive fixed yearly dividends payable semi-annually at the times therein specified. The certificates contain every essential feature of a certificate of preferred stock and none of a contract creating the relation of a creditor of the corporation. In *Warren* v. *Queen & Co.*, 240 Pa., 154, 87 A., 595, supra, reasons not more abundant or persuasive were deemed sufficient to fix the character of stock as preferred stock and not certificates of indebtedness.

The holders of the preferred stock contend, however, that, if their conversion agreements and the preferences therein created were unauthorized when made, their illegality has been removed by subsequent curative legislation. They call attention to Section 16, Chapter 203, Private and Special Laws 1907, which reads:

> "So far as the consent of the state is essential thereto, all the acts and doings of the Augusta, Winthrop and Gardiner Railway in the acquisition of the property and franchises of the Augusta, Hallowell and Gardiner Railroad Company and in the issue of its stocks and bonds and the mortgages securing the same, and also all the acts and doings of the Augusta, Hallowell and Gardiner Railroad Company in the issue of its stocks and bonds and the mortgages securing the same, are ratified, confirmed and approved."

We are not of opinion that the illegality of the conversion agreements was cured by this statute. The act does not clearly and definitely confer validity upon the agreements. The statute is not within the rule of *Kinston Cotton Mills* v. *Wachovia Bank & Trust Co.*, supra. Furthermore the validity of the conversion agreement depends upon the law existing when they were made. A contract of a corporation, if illegal and void when made because contrary to public policy, is not validated by a subsequent statute au-

thorizing it. *Schaun* v. *Brandt*, 116 Md., 560, 82 A., 551. This rule is not peculiar to corporate transactions. It applies to all contracts. "If an agreement was illegal by statute or on the grounds of public policy when made, it is not, according to the great weight of authority, rendered legal by repeal of the statute or by a subsequent change in public or legislative policy." 13 C. J., 261 and cases cited.

Nor can the conversion agreements be sustained on the ground of mistake or rendered valid by invoking the doctrine of estoppel. If it may be assumed that those who exchanged their bonds thereunder and the common stockholders and officers of the street railway companies believed the agreements to be valid when made, this was a mistake of law unaccompanied by other equities which entitle any of the parties to equitable relief. *Fenderson* v. *Fenderson*, 116 Me., 362, 102 A., 69. The agreements being void as against public policy, it is open to either party to urge the defense of illegality upon the principle that no one can be regarded as deceived into the supposition that a corporation can make a contract in which it is sought to enter if it is contrary to public policy. *Water Works Co.* v. *Brown*, 191 Ala., 457, 469 ; *Colby* v. *Title Ins. & Trust Co.*, 160 Cal., 632, 644, 117 P., 913 ; *Brown* v. *First National Bank*, 137 Ind., 655, 672, 37 N. E., 158 ; *Langan, et al.* v. *Sankey*, 55 Iowa, 52, 7 N. W., 393 ; *Seitz* v. *Michel*, 148 Minn., 80, 181 N. W., 102 ; *Wheeler* v. *Wheeler*, 5 Lans. (N. Y.), 355 ; 2 Beach on Pr. Corp., Sec. 438 et seq ; 6 R. C. L., 819 ; 10 R. C. L., 729. See *Gardiner Trust Co.* v. *Augusta Trust Co.*, 134 Me., —, 182 Atl. Rep., 685.

It must be held, therefore, that by surrendering their bonds and taking in lieu thereof preferred stock, the bondholders of these street railway companies ceased to be creditors and became mere stockholders. Those who have not made the exchange and hold their bonds are entitled to the security of the mortgages shorn of the illegal conversion agreements. The preferred stockholders are not entitled to share in the assets of the companies until all creditors have been paid in full.

The ruling of the sitting Justice that the Androscoggin & Kennebec Railway Company did not assume payment and is not liable for the debts secured by the mortgages of the Augusta, Hallowell & Gardiner Railroad Co. and the Augusta, Winthrop & Gardiner

Railway must be affirmed. So far as appears in the record, the railway company purchased the equities of redemption in the properties covered by the mortgages subject to incumbrances but without assuming payment of the mortgage debts. Although the deed of the Receiver of the Lewiston, Augusta & Waterville Street Railway by which these equities were acquired is not before the Court, it is conceded that it contained no recital imposing personal liability on the grantee. Nor does any accompanying contract, fact or circumstance indicate that the purchaser intentionally assumed this obligation to pay the mortgage debts. The mere acceptance of a conveyance of land subject to a mortgage does not bind the grantee to assume and pay the mortgage debt. *Elliott* v. *Sackett*, 108 U. S., 132; *Fiske* v. *Tolman*, 124 Mass., 254; Jones on Mortgages (8th Ed.), Sec. 933. For particular application of the rule to the purchase of an equity of redemption at a judicial sale, see *Equitable Trust Co.* v. *United Box Board & Paper Co.*, 220 Fed., 714. No more is there convincing proof of a subsequent binding agreement by the railway company to assume these mortgages. If the acts and declarations of its officers could be construed as implying a promise to pay these debts, which is very doubtful, the promise is clearly without consideration and void. *Andrews* v. *Robertson*, 177 Cal., 434, 170 P., 1129; *Frase* v. *Lee*, 152 Mo. App., 562, 134 S. W., 10; *Green* v. *Hall*, 45 Neb., 89, 63 N. W., 119; *Brown* v. *Leeak*, 52 N. D., 398, 203 N. W., 185; 41 C. J., 727.

The Androscoggin & Kennebec Railway Company is not estopped to deny that it assumed these mortgage debts. In its annual reports to its stockholders and to the Public Utilities Commission of Maine, these mortgages, for a number of years, were included in its funded debt. It is not clearly established, however, that these reports were made for the purpose of inducing the purchase of bonds secured by the mortgages, or had that result. Apparently, the complainant, Henry Lewis, alone had access to the reports to the stockholders and, noting the amount of the funded debt, assumed that the mortgages were included in that liability item. These reports are not brought before this Court and their contents are largely a matter of conjecture. The appellant, Lewis, is not certain what reports he saw or when he read them. In cross-examination, he admits he knew that the railway company pur-

chased the properties at Receiver's sale subject to outstanding mortgages and "that they purchased it without assuming the debts." As to the reports to the Public Utilities Commission, so far as the record discloses, neither this appellant nor any other bond-holders saw the reports or knew their contents. No other fact or circumstance is shown to the Court which would warrant the conclusion that any of the appellants, by relying thereon, were misled to their prejudice. Estoppel can not rest upon mere conjecture. When a party is to be deprived of his right to allege the truth by an estoppel, the equity must be strong and the proof clear. The estoppel must be certain to every intent and not taken by argument or inference. *Hooper* v. *Bail*, 133 Me., 416, 179 A., 404; *Stubbs* v. *Pratt*, 85 Me., 429, 27 A., 341; Coke, Litt., 352b.

The appeals are sustained and the cases remanded for entry of decrees modifying the original decrees in accordance with this opinion. In all other respects, the decrees below are affirmed.

*So ordered.*