Carlton E. MARTIN

v.

The PRUDENTIAL INSURANCE COMPANY.

Supreme Judicial Court of Maine.

July 27, 1978.

Smith, Elliott, Wood & Nelson, P. A. by Terrence D. Garmey, (orally), Robert J. Foley, Saco, for plaintiff.

Robinson, Hunt & Kriger by Sarah M. Allison, (orally), M. Roberts Hunt, Portland, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

McKUSICK, Chief Justice.

The questions presented by this appeal are whether the Superior Court erred (1) in its instructions to the jury on the elements of equitable estoppel and (2) in refusing to instruct the jury on the elements of an oral contract of temporary insurance.

### I.

In January 1976 plaintiff Carlton E. Martin commenced this action in Superior Court in York County against the defendant, Prudential Insurance Company (Prudential), seeking to recover $10,000 as the beneficiary of alleged insurance on the life of his deceased daughter, Eva L. Martin. The jury returned a verdict for Prudential,[1] and plaintiff prosecuted this timely appeal from the judgment.

We deny the appeal.

From the evidence introduced at trial in the form of testimony and documentary exhibits, the following facts appear. Plaintiff's daughter, Eva, died on March 6, 1975, at the age of 21, her 21st birthday having been on November 20, 1974. Prior to her death she was insured for $1,000 as a dependent child under each of two family group life insurance policies issued by Prudential, one to plaintiff Carlton Martin and one to his wife Constance G. Martin. Eva's coverage under plaintiff's policy was to expire on the first *policy anniversary* after she attained the age of 21, *i. e.,* April 22, 1975. On that date, Eva's insurance was convertible to a policy in her own name for $5,000. Similarly, under Mrs. Martin's policy, Eva could convert her $1,000 of term insurance to a policy for $5,000. That conversion privilege was not, however, available to Eva until the first policy anniversary following her twenty-*fifth* birthday, *i. e.,* March 23, 1979.

The present litigation stems from Eva's attempts in the months immediately preceding her death to exercise those conversion privileges, and from a succession of errors on the part of the Prudential agents dealing with her. Eva knew that she suffered from a congenital heart condition which seriously limited her life expectancy. During 1974 she applied for life insurance to at least three major companies, including Prudential. On the basis of her physical condition, however, those companies uniformly rejected her applications. Sometime in the fall of 1974, Eva contacted Prudential concerning the possible conversion of her $1,000 coverage under each of her parents' policies. On November 12, 1974, eight

---

1. The Superior Court instructed the jury with respect to the estoppel theory only. Plaintiff's attack on that action of the court is treated later in this opinion.

days before her twenty-first birthday, Eva first met with Prudential agent Ronald Libby. At that meeting Libby had Eva complete "new business" applications for two policies of life insurance providing $5,000 coverage each. In exchange for her payment of $175.40, Libby issued to Eva a "prepayment receipt" expressly providing that she was covered by temporary insurance "equal to the amount applied for," namely, $10,000, for a period of at most 60 days.

Within a few days, Libby realized that the "new business" applications were in fact inappropriate to effect Eva's conversion under her parents' policies. Accordingly, Libby again met with Eva on November 18, at which time he had her complete the proper applications for conversion. Prudential retained Eva's previous payment and did not request that she return the prepayment receipt.

Sometime in February 1975 Prudential's agents determined that Eva's applications for conversion would have to be redone because they were completed too far in advance of the applicable conversion dates. Libby, joined this time by his supervisor, Fred Leone, met with Eva on February 28, 1975, and on the instructions of the agents Eva completed a new conversion application pertaining to Mrs. Martin's policy, which was not, however, actually convertible for over four years, that is, not until March 23, 1979.[2] Agent Leone further testified that on February 28 Eva also completed a conversion application for Mr. Martin's policy, which was actually convertible in approximately two months, on April 22, 1975. At that same meeting the agents gave Eva a Prudential draft for $175.40 representing a return of her previous November 12 payment. This draft Eva promptly endorsed back to Prudential. Eva had no further contact with Prudential and died a week later on March 6, 1975.

After Eva's death Carlton Martin, as the beneficiary named by Eva in her November and February conversion applications, filed

a timely claim with Prudential for $10,000 in insurance proceeds. In response, Prudential returned to Mr. Martin Eva's prior $175.40 payment and denied liability under any converted policies of insurance, taking the position that it was liable to the Martins only to the extent of the $1,000 term insurance provided for Eva in each of their family group policies. Plaintiff subsequently abandoned the contention that Eva had in fact successfully converted either policy and filed the complaint in the present action asserting equitable estoppel and an oral contract of temporary insurance as theories of recovery.

## II. Jury Instructions on Equitable Estoppel

At the close of the charge to the jury, plaintiff objected to the court's refusal to instruct in accordance with his previously submitted instruction regarding detriment as an element of equitable estoppel. In pertinent part plaintiff requested the court to instruct the jury that "it is not necessary in order to invoke the doctrine of estoppel that a party must, as a result of the inequitable conduct of the other party, have suffered some detriment or injury without regard to whether or not the estoppel is allowed but only that he will be prejudiced if the estoppel is not given effect." After plaintiff's objection the Superior Court for the second time declined to grant the instruction, indicating it had already covered the point in its principal charge and, in any event, that the instruction requested was an erroneous statement of the law. The court did not err in so ruling.

 In the body of its charge, the court stated the following with respect to detrimental reliance:

"[T]he plaintiff must prove by a preponderance of the evidence that, because Miss Martin was misled, if you find that she was, that she did something that she would not have done, or failed to do something that she would otherwise have

**2.** Even at that late date Prudential's agents apparently continued to labor under the misap-

prehension that Mrs. Martin's family policy was convertible by Eva on March 23, 1975.

done had she been aware of the true situation. In other words, it is necessary for Mr. Martin to prove that because his daughter was misled, that she changed her position, she either failed to do something that she otherwise would have done, or she did something which she would not have done had she known the true situation.

"And finally, in order to prevail it is necessary for Mr. Martin to prove by a preponderance of the evidence that because of this change of position, if you find that there was one, that is that Miss Martin did something she would not otherwise have done, or failed to do something she would have done, that Miss Martin or her family have suffered injury, harm, or damage as a result of being misled."

This court has repeatedly held that in order for an estoppel to be made out

"the declarations or acts relied upon must have induced the party seeking to enforce an estoppel to do *what resulted to his detriment,* and what he would not otherwise have done." (Emphasis added) *Allum v. Perry,* 68 Me. 232, 234 (1878).

In other words, the party seeking to enforce an estoppel must show *more* than that he relied upon another's representations to the extent of performing acts which, but for the inducement, he would not have done. It is in addition an essential ingredient of the cause of action that the induced reliance causes actual *detriment* or *prejudice* to the party induced. Whether detriment results necessarily depends upon the relative position of the party asserting the estoppel before and after acting on the inducement. Thus, no estoppel arises unless the party who was induced to act as a result has suffered some prejudice to the position initially held by him. *E. g., Boston & Maine R. R. v. Hannaford Bros. Co.,* 144 Me. 306, 316, 68 A.2d 1, 7 (1949); *Augusta Trust Co. v. Augusta, Hallowell & Gardiner R. R. Co.,* 134 Me. 314, 329, 187 A. 1, 8 (1936); *4—One Box Machine Makers v. Wirebounds Patents Co.,* 131 Me. 70, 78, 159 A. 496, 499 (1932); *Blaisdell Automobile Co. v. Nelson,* 130 Me. 167, 169–70, 154 A. 184, 186 (1931). *Cf. Milliken v. Buswell,* Me., 313 A.2d 111, 118–19 (1973).

■ The quoted portions of the court's charge adequately apprised the jury of the law respecting detrimental reliance, and the court did not err in refusing to instruct on it further in keeping with plaintiff's request.[3]

### III. *Evidence of Oral Contract*

■ The Superior Court, citing absence of supporting evidence, refused to instruct the jury on plaintiff's theory that Eva and the defendant had entered into an oral contract of temporary life insurance in the amount of $10,000. The court's ruling in all respects was equivalent to its granting the defendant's earlier motion for a directed verdict on that aspect of plaintiff's case. In reviewing the correctness of that ruling, we must "consider the evidence, including every justifiable inference therefrom, whenever reasonably possible, in the light most favorable to the plaintiff[s] as the part[y] against whom the verdict was directed." *Reed v. Rule,* Me., 376 A.2d 445 (1977). Applying that standard, we conclude that the Superior Court correctly ruled the evidence insufficient to warrant the jury's finding any oral contract of insurance.

The prepayment receipt given to Eva by Prudential at their initial November 12

---

**3.** In any event, as the court below observed, plaintiff's requested instruction did not state the applicable legal principles accurately. Plaintiff argued that his requested instruction was justified by this court's decision upholding the finding of estoppel in *Tracey v. Standard Accident Ins. Co.,* 119 Me. 131, 109 A. 490 (1920). In *Tracey,* however, the court found that the insured plaintiff satisfied his burden of proving detrimental reliance *not* merely because he had shown inability to recover under his policy, but (critically) because "the *plaintiff* by [his insurer's acts] *was induced to do what defeated the entire indemnity of his policy."* (Emphasis added) *Id.* at 135, 109 A. at 492. Tracey had been induced by his insurer to take actions which cost him his rights under his insurance policy. But for his insurer's representations, Tracey would have recovered under that policy. Only in that context did this court conclude that detriment sufficient to support an estoppel had been shown.

meeting expressly provided her temporary insurance coverage in the amount of $10,000. In exchange, Eva paid Prudential $175.40. Although the receipt by its terms expired at the latest 60 days from issuance, plaintiff contends that prior to Eva's death Prudential had revived Eva's temporary insurance by an oral agreement to provide such coverage on terms similar to those stated in the prepayment receipt.

Mr. and Mrs. Martin testified that after the February 28 meeting Eva believed that everything was "all set" with Prudential and that she was "covered." Even if the jury believed that testimony, it was at best ambiguous as evidence of Eva's belief. She may have meant either that she was "covered" to the extent of $10,000 *as of that time,* or simply that she had finally succeeded in doing what was required effectively to convert the policies *at the future time* when they became convertible. In any event, even if the jury had construed those statements as an unequivocal indication that Eva *believed* Prudential had orally promised her temporary insurance of $10,000, such a belief on her part would have been unfounded and unreasonable.

Without question the Prudential agents responsible for Eva Martin's applications made many mistakes and repeatedly gave her misinformation in the course of her attempts to convert the two family insurance policies. Nevertheless, at least after the initial November 12 meeting, all transactions between them were clearly geared toward the conversion of those policies and not toward contracting for any other type of insurance, such as temporary insurance. It is clear from the face of the initial prepayment receipt, which did provide temporary insurance coverage, that it was issued in conjunction with Eva's application for "new business" insurance. Although Prudential never requested that Eva return the receipt, that fact of itself would not support an inference that once the maximum 60-day

period for the receipted-for temporary insurance expired in January 1975 Prudential orally agreed to continue to provide that coverage. Prudential did not, it is true, return Eva's $175.40 payment of November 12 until the February 28 meeting, at which time she endorsed Prudential's draft for that entire amount back to Prudential, even though, as recited in the one application for conversion in evidence, she was then required to make a premium payment of only $77.30. There is not a scintilla of evidence, however, to suggest that the balance of the draft was paid by Eva in consideration for an additional promise by Prudential to provide temporary life insurance.[4] To infer that such was the case would be sheer speculation on the part of the factfinder.

The entry must be:

Appeal denied.

Judgment affirmed.

GODFREY and NICHOLS, JJ., did not sit.

---

4. Much more plausible, in fact, was the Prudential agents' testimony that Eva intended the balance of the draft to be credited toward payment of the premium soon to be due on conversion of Mr. Martin's policy, actually convertible on April 22, 1975, or alternatively, to be put toward satisfaction of future premium payments on the policy which Eva believed she had converted on February 28.