**WATERVILLE HOMES, INC. and Trafton Properties, Inc.**

v.

**MAINE DEPARTMENT OF TRANSPORTATION.**

Supreme Judicial Court of Maine.

Submitted on Briefs Jan. 16, 1991.
Decided April 18, 1991.

---

Daniel W. Emery, Philip E. Johnson, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, for plaintiffs.

John C. Hunt, Dept. of Transp., Portland, for defendant.

Before ROBERTS, GLASSMAN, CLIFFORD, COLLINS and BRODY, JJ.

COLLINS, Justice.

Plaintiffs, Waterville Homes, Inc. and Trafton Properties, Inc., appeal the dismissal of their complaint for injunctive relief against defendant Maine Department of Transportation (M.D.O.T.). We affirm as a summary judgment for defendant.

In 1985, the City of Waterville (City) asked defendant to evaluate Trafton Road as a possible site for an I–95 interchange. Defendant did a cost/benefit analysis on the proposed site and decided that it would include an interchange at Trafton Road in its transportation program if the City agreed to upgrade Trafton Road to appropriate standards, the Federal Highway Administration (F.H.W.A.) approved the construction and certain land-use changes were realized. These conditions were communicated to the City in a letter dated November 5, 1986. It began: "This letter is intended to re-affirm the M.D.O.T.'s position regarding a *potential* interchange with I–95 at the Trafton Road in Waterville." (emphasis added). Subsequently, the F.H.W.A. gave its preliminary approval to the project and funds were included in defendant's budget with the note that "this project is contingent upon the establishment of significant commercial development now proposed in the immediate area." The project was not built because the necessary land-use changes had not occurred.

In June, 1989, the City approached defendant and requested a proposed interchange be located at another road, Webb Road. The City Council passed a resolution that stated, among other things: "Whereas, the M.D.O.T. has given an indication that construction of a Webb Road interchange in the near future would not preclude the construction of an interchange at the Trafton Road in the distant future; ... Be it hereby resolved ... that the Commissioner of the Department of Transportation give favorable consideration to the building of an interchange from I–95 to the intersection of Webb Road." Defendant was conducting a cost/benefit analysis of the Webb Road location at the time of this complaint.

Plaintiffs alleged the following additional facts. Plaintiffs are two corporations that now own property near the Trafton Road location. They presented information to defendant, "in concert with the City," to justify the location of the interchange on Trafton Road in 1985. After receiving information that defendant had "endorsed construction of an interchange at Trafton

Road, subject to certain conditions ...," Waterville Homes obtained options to purchase Trafton Road property. Later, after the letter from defendant to Waterville indicating potential approval if conditions were met, the F.H.W.A. approval, and the conditional inclusion of funds for the project in defendant's budget, Trafton Properties, Inc. exercised the options held by Waterville Homes, Inc. and purchased Trafton Road property for more than one million dollars. Waterville Homes, during this time period, leased and later purchased another property on Trafton Road, the Wyandotte Mill, expending more than $300,000.

On July 31, 1989, plaintiffs requested the Superior Court to enjoin defendant from commencing proceedings to change the location of the interchange from Trafton Road to Webb Road. They alleged that "by virtue of its prior designation of the Trafton Road interchange, its representations to representatives of Waterville Homes and Trafton Properties that M.D. O.T. would construct such interchange when certain events took place, and reasonable reliance on those representations by Trafton Properties and Waterville Homes to their detriment, M.D.O.T. is estopped from commencing procedures to change the location of the designated interchange." Defendant filed a motion to dismiss on April 14, 1990 for failure to state a claim pursuant to M.R.Civ.P. 12(b)(6). Supporting affidavits were submitted by both parties. The motion was granted on June 5, 1990 (Kennebec County, *Silsby, J.*). This appeal followed on July 5, 1990.

Although we are bound to treat this motion and decision as one for summary judgment and not dismissal because the court had before it affidavits submitted by the parties that it did not exclude, *see* M.R. Civ.P. Rule 12(b)(6), we agree with the Superior Court that this complaint does not state a claim. First, plaintiffs' argument on appeal that their complaint sets forth the essential elements of estoppel fails to recognize the well settled principle that estoppel is "available only for protection, and cannot be used as a weapon of as-

sault." *See Dickerson v. Colgrove*, 100 U.S. 578, 581, 25 L.Ed. 618 (1879); *see, also,* H. Hanbury, *Modern Equity* 99 (8th ed. 1962) (equitable estoppel provides one with a shield, it is a departure to suggest it should be turned into a sword). It is an equitable affirmative *defense* that operates to absolutely preclude a party "from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy." *Martin v. Me. Central R.R. Co.*, 83 Me. 100, 104, 21 A. 740 (1890) (quoting Pomeroy's Equity § 804); *see Rogers v. Street Railway*, 100 Me. 86, 90–91, 60 A. 713 (1905); *see, also, Anderson v. Commissioner of Dept. of Human Services*, 489 A.2d 1094, 1099 (Me.1985) ("estoppel bars the assertion of the truth by one whose misleading conduct has induced another to act to his detriment in reliance on what is untrue"). Second, even ignoring plaintiffs' improper label of estoppel in the first instance, the complaint lacks an allegation of the one element of a true estoppel defense that could provide a theory of relief: misconduct, e.g., fraud or misrepresentation. *Milliken v. Buswell*, 313 A.2d 111, 119 (Me.1973); *see Mathieu v. Commissioner of Human Services*, 562 A.2d 686, 689 (Me.1989) (one of the elements of estoppel is misleading conduct on the part of the person to be estopped). Plaintiffs' complaint only alleges that defendant made conditional "representations" that plaintiffs relied on to buy land and buildings in the hope of realizing profits from commercial development of the area. Their gamble did not pay off. The complaint fails to state a claim for which relief can be granted on any theory.

The material before the court other than the pleadings adds nothing to plaintiffs' case. The affidavit submitted by plaintiffs with its attached exhibits does not establish any misrepresentations made by defendant to plaintiffs. It discusses only negotiations plaintiffs had with the City about a zoning

change for the Trafton Road properties. The affidavit submitted by defendant demonstrates that defendant was acting within its statutory authority and dealt only with the City. On this record, looking at the facts in the light most favorable to plaintiffs, there is no material dispute and defendant is entitled to summary judgment as a matter of law. *See Levesque v. Chan,* 569 A.2d 600, 601 (Me.1990).[1]

The entry is:

Vacate dismissal, affirm as summary judgment for defendant.

All concurring.

---

1. M.R.Civ.P. 12(b)(6) provides that if a motion to dismiss is to be treated as a summary judgment motion, "all parties shall be given reasonable opportunity to present all material pertinent to such a motion...." Plaintiffs submitted a counteraffidavit to defendant's motion and supporting affidavit. They state on appeal that they know this motion could have been treated as a summary judgment motion. Neither the record nor plaintiffs suggest that plaintiffs were deprived of a meaningful opportunity to present other material. *See, e.g., Chiapetta v. Clark Associates,* 521 A.2d 697, 700–01 (Me.1987).