STATE OF MAINE                                              SUPERIOR COURT
CUMBERLAND, ss                                             Civil Action
                                                           Docket No. RE-06-272

WILLIAM CHASE,

             Plaintiff
                                                       DECISION AND ORDER
    v.                                               ON DEFENDANT'S MOTION FOR
                                                         SUMMARY JUDGMENT
SOUTHERN MAINE ECONOMIC
DEVELOPMENT DISTRICT, *et als.*,

             Defendants


## I. BEFORE THE COURT

This matter comes before the court on defendant Southern Maine Economic

Development District's (SMEDD) motion for summary judgment as to Count III of

plaintiff's complaint, a claim for equitable estoppel.[1] Count III is the only claim alleged

against SMEDD in the three-count complaint.[2]


## II. BACKGROUND AND PROCEDURAL HISTORY

The following facts are not in dispute. In 1996, the plaintiff, William Chase,

borrowed $100,000 from SMEDD, $100,000 from the Maine Department of Economic

and Community Development (DECD), and $83,000 from the City of Westbrook (the

City) to start up a business called Efficient Air Systems, Inc. The loans were secured by

a mortgage on an 11-acre parcel owned by Chase and his former wife, Dorian Banister.

---

[1] Although Chase has titled Count III of his complaint "Detrimental Reliance," both parties agree that it is
essentially a claim for equitable estoppel.

[2] Counts I and II were claims against the City of Westbrook for estoppel and for an accord and
satisfaction. Those claims have since been settled. The plaintiff filed a motion for substitution of parties
on October 9, 2007, seeking to substitute himself in the place of the City for purposes of the City's
counterclaims, as he had purchased the mortgage and note from the City. The court denied the motion
because Chase had not provided any proof of the mortgage assignment. Chase filed a motion for
reconsideration with supporting documents to which there has been no opposition. The court has
granted the motion pursuant to M.R.Civ.P. 7(c)(3).

All three lenders were represented separately, and Chase dealt with a different person for each lender. Chase also invested $155,000 of his own money and established a $200,000 line of credit with Key Bank. By 1998, however, Chase began to experience financial difficulty. Between 1999 and 2002, Chase met regularly with representatives of Key Bank and annually with the other three lenders. However, Key Bank liquidated all of the business assets in August 2002 and Chase was left with no source of income. He remained heavily indebted to SMEDD, DECD, and the City.

In late 2002, Chase met with Vincent DiCara, a representative of SMEDD, to discuss his options. Although the content of the conversation between the parties is disputed, both agree that DiCara presented a plan whereby Chase would come up with $15,000, and DiCara would speak with the other lenders about splitting the money between the three. DiCara told Chase that because SMEDD had the priority mortgage, neither of the other two lenders would recover anything if Chase went bankrupt. Some time thereafter, DiCara told Chase that the other lenders had agreed to the deal. However, Chase experienced difficulty coming up with the $15,000 to pay to the lenders. Eventually, Banister refinanced her house, and her mortgage company wrote three $5,000 checks to Chase's creditors.[3] However, when Banister tried in 2006 to again refinance her house, Chase learned that the deal with the other lenders had not materialized.[4] Although DECD eventually agreed to discharge the debt for the $5,000 paid, the City declined to do so, and Chase finally settled his debt with the City for $80,000.

---

[3] The parties disagree about whether Chase was obligated to repay his wife the $15,000.

[4] Chase asserts in his memorandum of law that he was required to remove the liens on the property pursuant to a divorce decree between Banister and himself. However, Chase has not included a copy of that decree with his pleadings.

2

Chase filed a complaint against both the City and SMEDD in December 2006. The City filed its answer and counterclaimed against Chase, Bannister, and Efficient Air Systems, Inc.[5], seeking foreclosure of the property and judgment for the amount due on the note.[6] The City also joined New Century Mortgage Corp. as a party-in-interest. SMEDD filed its answer to Chase's complaint and denied all claims. Chase answered the City's counterclaim as did Bannister. In turn, Bannister filed a "second counterclaim" against Gateway Title Company (Gateway),[7] claiming that it was negligent on two occasions when it represented to Bannister that the mortgages held by the City and by SMEDD had been discharged.

## III. DISCUSSION

### A. Standard of Review.

Summary judgment is proper where there exist no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. A genuine issue is raised "when sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *Parrish v. Wright*, 2003 ME 90, ¶ 8, 828 A.2d 778, 781. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18,

---

[5] Bannister and Efficient Air Systems, Inc. (EAS) were not parties at this point. They should have been joined pursuant to M.R.Civ.P. 19 or brought in as defendants in a third-party complaint. M.R.Civ.P. 14. Counterclaims are available to assert claims against opposing parties, *i.e.*, those who are already in the case. M.R.Civ.P. 13.

[6] The court considers that the City's claims against Chase have been settled.

[7] Gateway was not a party at this point, and like Bannister and EAS should have been joined pursuant to M.R.Civ.P. 19 or brought in as a third-party defendant.

22. A party wishing to avoid summary judgment must present a prima facie case for the claim or defense that is asserted. *Reliance National Indemnity v. Knowles Industrial Services*, 2005 ME 29, ¶ 9, 868 A.2d 220, 224-25. At this stage, the facts are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63, 65.

## B. Equitable Estoppel

The doctrine of equitable estoppel "involves misrepresentations, including misleading statements, conduct or silence, that induce detrimental reliance." *Cottle Enterprises, Inc. v. Town of Farmington*, 1997 ME 78, n. 6, 693 A.2d 330, 336. The reliance must be reasonable. *Roberts v. Maine Bonding and Casualty Co.*, 404 A.2d 238, 241 (Me. 1979). Equitable estoppel works by "bar[ring] the assertion of the truth by one whose misleading conduct has induced another to act to his detriment in reliance on what is untrue." *Longley v. Knapp*, 1998 ME 142, ¶ 12, 713 A.2d 939, 943 (quotations and citations omitted).

The United States Court of Appeals for the First Circuit has noted that Maine law is not entirely clear about whether equitable estoppel is an independent cause of action, or whether it is only an affirmative defense. *Grande v. St. Paul Fire & Marine Ins. Co.*, 436 F.3d 277, 279 n. 1 (1st Cir. 2006) (citing *Waterville Homes, Inc. v. Me. Dep't of Transp.*, 589 A.2d 455, 457 (Me. 1991) for the proposition that equitable estoppel can only be used as an affirmative defense, and *Martin v. Prudential Ins. Co.*, 389 A.2d 28, 30-32 (Me. 1978) as support that it may be asserted as an independent claim).

In *Waterville Homes, Inc.*, two corporations were suing the Maine Department of Transportation (MDOT) on an equitable estoppel theory, and were seeking to enjoin the MDOT from choosing another site for an I-95 interchange after they had purchased property at a different proposed site. 589 A. 2d at 456-57. The Law Court rejected the

claim, stating "plaintiffs' argument on appeal that their complaint sets forth the essential elements of estoppel fails to recognize the well-settled principle that estoppel is available only for protection, and cannot be used as a weapon of assault." *Id.* at 457. (quotations and citations omitted). According to the Court, "[i]t is an equitable affirmative *defense* that operates to preclude a party from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy." *Id.* (emphasis in original) (quotations and citations omitted).

In spite of this strong language rebuking the idea that equitable estoppel operates solely in a defensive capacity, there are cases that seem to suggest an independent claim theory of recovery. *See e.g. Martin,* 389 A.2d at 30-31; *Roberts,* 404 A.2d at 241-42; *Connelly v. Home Life Ins. Co.,* 432 A.2d 1235, 1236. However, these cases all involved plaintiffs seeking to estop insurers from denying recovery under a real or alleged insurance contract on either the basis of the contractual terms or the nonexistence of a contract in the first place. Other cases provide support for the use of equitable estoppel as a means of preventing a defendant from invoking an applicable statute of limitations. *See Hanusek v. Southern Maine Medical Center,* 584 A.2d 634, 636 (Me. 1990); *Dugan v. Martel,* 588 A.2d 744, 746-47. Essentially, other than *Martin,* all of the cases involving equitable estoppel allow it to be used as a defensive mechanism. That is, a defendant can use it against the assertion of a plaintiff's claim, or a plaintiff can use it against the assertion of a party's defense.

Even *Martin,* however, does not provide strong support for a theory of independent action. The issues on appeal dealt solely with the propriety of certain jury

instructions after a jury found in favor of the defendant. 389 A.2d at 29. In that case, the plaintiff was suing an insurance company in an attempt to recover money that he claimed he was entitled to as a beneficiary of his daughter's alleged life insurance policy. *Id.* His daughter had died before she was able to exercise privileges under both the plaintiff and his wife's policies that would allow her to convert her insurance coverage to her own policies with increased benefits. *Id.* However, she had negotiated with the defendant's agents prior to her death and was given mistaken information on at least one occasion. *Id.* at 29-30. Because the policies under which the plaintiff sought recovery were not actually in existence when his daughter died, his complaint alleged both equitable estoppel and the existence of an oral contract. *Id.* at 30. Over the plaintiff's objections, the trial judge had refused to instruct the jury that it was not necessary to find that the plaintiff had suffered a detriment to invoke the doctrine of equitable estoppel.[8] *Id.* The Law Court upheld the decision, stating "no estoppel arises unless the party who was induced to act as a result has suffered some prejudice to the position initially held by him." *Id.* at 31.

In spite of the fact that *Martin* suggests the possibility of asserting an independent equitable estoppel claim, it is important to realize that the plaintiff's daughter in that case did in fact have an insurance policy with the defendant. Prior to her death, she was seeking to negotiate new contracts, and the plaintiff was seeking to estop the defendant from denying the existence of those new contracts, even though they did not in fact exist. Thus, the plaintiff was properly trying to use the doctrine of equitable estoppel to prevent the defendants from asserting the truth when he believed they had engaged in misrepresentation.

---

[8] The trial judge also declined to instruct the jury concerning the existence of an oral contract because the evidence was insufficient to warrant the instruction. *Martin*, 389 A.2d at 31-32.

This line of cases establishes that the doctrine of equitable estoppel is meant solely as a defensive mechanism against an assertion by either party of some claim or right. However, in this case, even if equitable estoppel is viewed as a viable cause of action, Chase has not explained what SMEDD should be estopped from asserting. While there are other legal theories that exist to hold someone liable for promises or misrepresentations,[9] Chase cannot prevail as a matter of law on his claim for damages because the proper operation of equitable estoppel is to prevent a party from asserting a particular claim or defense because of his or her misrepresentations. Chase is seeking reliance damages for what he claims were misrepresentations made by SMEDD; however, he has not identified any defense that SMEDD should be precluded from asserting, nor has he asserted any independent legal grounds for recovery.

## IV. DECISION AND JUDGMENT

Whereas there is no dispute as to material facts, the defendant Southern Maine Economic Development District is entitled to judgment as a matter of law.

The clerk will make the following entry as the Decision and Judgment of the court:

> **A.** The Motion for Summary judgment by defendant Southern Maine Economic Development District is granted.
>
> **B.** The clerk will enter judgment for defendant Southern Maine Economic Development District.
>
> **C.** This a final judgment pursuant to M.R.Civ.P. 54(b)(1).[10]

---

[9] For example, a claim of promissory estoppel or of negligent misrepresentation could provide a basis for recovery. *See e.g. Nappi v. Nappi Distributors*, 1997 ME 54, ¶ 9, 691 A.2d 1198, 1200 (discussing promissory estoppel); *Rand v. Bath Iron Works Corp.*, 2003 ME 122, ¶ 13, 832 A.2d 771, 774-75 (discussing negligent misrepresentation).

[10] The plaintiff has been substituted as a party in place of the City of Westbrook. This moots any claims in Counts I and II even if they are still viable. The court has ruled in favor of defendant SMEDD on Count III. If any party believes that any of the claims asserted in the improvidently filed counterclaims

**D.** No costs are awarded.

SO ORDERED.

DATED:     February 12, 2008

Thomas E. Delahanty II
Justice, Superior Court

---

are still viable, they shall notify the court in writing within 10 days of the date of this judgment and shall clearly state the claims that remain.

WILLIAM CHASE - PLAINTIFF

Attorney for: WILLIAM CHASE
RAY PALLAS  - RETAINED 12/15/2006
LAW OFFICES OF RAY PALLAS
425 MAIN STREET
WESTBROOK ME 04092


vs
SOUTHERN MAINE ECONOMIC DEVELOPMENT DISTRICT - DEFENDANT

Attorney for: SOUTHERN MAINE ECONOMIC DEVELOPMENT
DISTRICT
MAURICE SELINGER III - RETAINED 12/22/2006
CURTIS THAXTER STEVENS BRODER & MICOLEAU
ONE CANAL PLAZA
PO BOX 7320
PORTLAND ME 04112

Attorney for: SOUTHERN MAINE ECONOMIC DEVELOPMENT
DISTRICT
GEORGE M LINGE  - RETAINED
CURTIS THAXTER STEVENS BRODER & MICOLEAU
ONE CANAL PLAZA
PO BOX 7320
PORTLAND ME 04112

CITY OF WESTBROOK - DEFENDANT

Attorney for: CITY OF WESTBROOK
WILLIAM H DALE  - RETAINED 12/22/2006
JENSEN BAIRD ET AL
10 FREE STREET
PO BOX 4510
PORTLAND ME 04112

Attorney for: CITY OF WESTBROOK
SALLY DAGGETT  - RETAINED 12/22/2006
JENSEN BAIRD ET AL
10 FREE STREET
PO BOX 4510
PORTLAND ME 04112

WILLIAM R CHASE JR - DEFENDANT
DORIAN BANNISTER  - DEFENDANT

Attorney for: DORIAN BANNISTER
THADDEUS V DAY  - RETAINED 03/13/2007
LAW OFFICE OF THADDEUS V  DAY
440 WALNUT HILL ROAD
PO BOX 11
CUMBERLAND CENTER ME 04021

EFFICIENT AIR SYSTEMS INC - DEFENDANT
GATEWAY TITLE COMPANY - DEFENDANT

**DOCKET RECORD**

Attorney for: GATEWAY TITLE COMPANY
THEODORE KIRCHNER  - RETAINED 04/30/2007
NORMAN HANSON & DETROY
415 CONGRESS ST
PO BOX 4600
PORTLAND ME 04112


NEW CENTURY MORTGATE CORPORATION - PARTIES IN INTEREST


Filing Document: COMPLAINT                    Minor Case Type: OTHER REAL ESTATE
Filing Date: 12/15/2006

## Docket Events:
12/15/2006 FILING DOCUMENT - COMPLAINT FILED ON 12/15/2006


12/18/2006 Party(s):  WILLIAM CHASE
           ATTORNEY - RETAINED ENTERED ON 12/15/2006
           Plaintiff's Attorney: RAY PALLAS


12/18/2006 Party(s):  WILLIAM CHASE
           SUMMONS/SERVICE - CIVIL SUMMONS FILED ON 12/15/2006


12/18/2006 Party(s):  WILLIAM CHASE
           SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 12/05/2006
           UPON DEF CITY OF WESTBROOK TO BARBARA HAWKES (DC)


12/18/2006 Party(s):  WILLIAM CHASE
           SUMMONS/SERVICE - CIVIL SUMMONS FILED ON 12/15/2006


12/18/2006 Party(s):  WILLIAM CHASE
           SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 12/07/2006
           UPON DEF SOUTH MAINE ECONOMIC DEVELOPMENT TO ANN MAZEROLLE, FINANCE DIRECTOR (DC)


12/18/2006 CERTIFY/NOTIFICATION - CASE FILE NOTICE SENT ON 12/18/2006


12/26/2006 Party(s):  SOUTHERN MAINE ECONOMIC DEVELOPMENT DISTRICT
           RESPONSIVE PLEADING - ANSWER FILED ON 12/22/2006
           OF SOUTHERN MAINE ECONOMIC DEVELOPMENT DISTRICT (GM)


12/26/2006 Party(s):  SOUTHERN MAINE ECONOMIC DEVELOPMENT DISTRICT
           ATTORNEY - RETAINED ENTERED ON 12/22/2006
           Defendant's Attorney: MAURICE SELINGER III


12/26/2006 Party(s):  SOUTHERN MAINE ECONOMIC DEVELOPMENT DISTRICT
           ATTORNEY - RETAINED ENTERED ON 12/22/2006
           Defendant's Attorney: GEORGE M LINGE


12/26/2006 Party(s):  CITY OF WESTBROOK
           RESPONSIVE PLEADING - ANSWER & COUNTERCLAIM FILED ON 12/22/2006
           OF CITY OF WESTBROOK WITH JOINDER OF PARTIES AND EXHIBITS A-C (GM)


12/26/2006 Party(s):  CITY OF WESTBROOK
           ATTORNEY - RETAINED ENTERED ON 12/22/2006
           Defendant's Attorney: WILLIAM H DALE