STATE OF MAINE                           SUPERIOR COURT
PENOBSCOT, ss.                           CIVIL ACTION
                                         DKT. NO. CV-14-100

TODD BEAULIEU, derivatively      )
o/b/o BEAUCAMP, LLC,             )
                                 )
Plaintiff,                       )
                                 )
v.                               )       ORDER
                                 )
THOMAS CAMPBELL and              )
PIXIE CAMPBELL,                  )
                                 )
Defendants.                      )

Both parties have filed post judgment motions describing a variety of alleged errors and omissions contained in the Court's February 21, 2018 Judgment in this case. Both parties ask the Court to amend that judgment and, additionally, the Campbells want the Court to now take judicial notice of residential home price statistics. It is not known why defense counsel did not ask the Court to take judicial notice of these facts at the time of trial.

A. The Campbells' Motion

Depending on how one computes the tally, the Campbells allege up to 13 errors in the Court's Judgment. Most have already been raised and rejected. The Court will place them in the following categories.

1.  27 Green Lake Rd.

The Campbells reiterate arguments they made at the time of trial concerning the disposition of 27 Green Lake Rd. (27). The Court does not alter its relevant conclusions, even if it took judicial notice of the offered facts concerning nationwide real estate prices

at this late date.[1] The crux of this dispute centers upon the Court's determination that permitting Beaulieu to move into the property was a Beaucamp LLC decision. In support of this, the Court found that by moving in, obtaining title, and financing the LLC's indebtedness in their own names, the Beaulieus benefited the LLC with lower borrowing costs. The Court also indicated, based on believable testimony that Beaulieu had looked into selling the property and had concluded that it would not be advantageous for the LLC to market it, that the LLC was experiencing difficulty in selling it. These factors made it advantageous to the LLC for the Beaulieus to move in. As work progressed on Pine Trail, which was being built with LLC funds on land the Campbells held personally, it became clear that the finished house would be their property. Beaulieu continued to work there just as Campbell had continued to work on 27 after the Beaulieus had moved in. Ultimately, the Court's finding that there was tacit LLC agreement concerning the disposition of the two properties is supported by record evidence and defeats the Campbells' various arguments based on a contrary view of the evidence.

The result urged by the Campbells – that the Beaulieus keep 27 Green Lake Rd., remain responsible for the related indebtedness that had been LLC debt, and pay a large sum to the Campbells - while the Campbells will continue to own the valuable Pine Trail residence free of any indebtedness - is absolutely unsupported by any reasonable version of the evidence.

2. The Footnote

It is the Court's recollection that at the beginning of the trial, in response to the Court's specific question, the parties represented that they would not argue that one

---

[1] It would be preferable to ask the Court to take judicial notice of facts before it makes factual findings so that it could reflect on all of the facts at one time before making its decision.

contributed more than the other to the LLC effort. Regardless of the representations and after considering all of the evidence, the Court makes no findings that one contributed more than the other.

3. Daley Rd. and South St. Proceeds

Because the Court has found that the corporate books were accurate, it found that Beaulieu did not receive a disproportionate share from the sale of the Daly Rd. and South St. properties.

4. The Operating Agreement

The clause concerning membership certificates that the Campbells cite clearly pertains to contributions at the inception of the LLC only and is irrelevant to the trial issues of subsequent contribution.

5. Other Accounting Complaints

Again, the Court has accepted the accounting records as accurate, a decision supported by record evidence. The Court is not going to make additional findings in this regard.

6. Considering Increased Market Value

Because the Court has found that Beaulieu and Campbell agreed on the disposition of 27 Green Lake Rd. and Pine Trail, neither was entitled to expected profit from the transfer of property to the other.

7. Value of and shares in 28 Green Lake Rd.

Because the Court believed that other testimony concerning the value of this property was inflated, it valued it at $40,000, somewhat less than the price at which it had been marketed. This value, and the fact that Beaulieu will be awarded this asset, is to be considered in the winding up equation.

B. Beaulieu's Motion

The Court agrees that it failed to make an explicit finding concerning the claim for $10,000 that Beaulieu contributed to purchase Pine Trail. Simply put, the Court finds that the Beaulieus made the expenditure, but the Campbells paid it back.

The Court is hopeful that based on the underlying Judgment and this Order, the actual winding up can be resolved without further controversy. The court remains responsive to issues that may arise, however.

The Order is: Motions granted. The content of the Court's Judgment is altered as described herein, but the disposition expressed in the Judgment remains unchanged.

Dated: August 3, 2018

WILLIAM ANDERSON
JUSTICE, SUPERIOR COURT

**ORDER/JUDGMENT ENTERED IN THE
COURT DOCKET ON:** 8-9-18

TODD BEAULIEU and TODD
BEAULIEU derivatively o/b/o
BEAUCAMP LLC,

        Plaintiff,

        v.

THOMAS CAMPBELL and
PIXIE CAMPBELL,

        Defendant.

**JUDGMENT**

Hearing was held and post-trial briefs filed by June 13, 2017. The plaintiff was present and represented by Charles Cox, Esq. while the defendants were present and represented by A.J. Greif, Esq. Plaintiff's complaint is both derivative, in which Mr. Beaulieu asks the court to require the defendants to pay sums to the LLC and then order its dissolution, as well as personal, in which he asks the Court to order the defendants to pay him sums directly. Derivative plaintiff has alleged breach of contract, quantum meruit, and unjust enrichment; plaintiff Todd Beaulieu personally alleges dissolution, breach of good faith/fiduciary duty, breach of operating agreement, quantum meruit, unjust enrichment, and equitable estoppel. Defendant Thomas Campbell has counterclaimed against Beaulieu for dissolution, accounting, breach of fiduciary duty/good faith, quantum meruit and unjust enrichment.

### Background

Todd Beaulieu and Thomas Campbell, who were friends at the time, were interested in establishing a business in which they purchased properties and either made improvements to an existing structure or built a residence on the property. Their goal was to then sell the property at a profit. They set up Beaucamp LLC in 2003 as the

1

business entity through which they would accomplish their real estate development goals. They adopted an Operating Agreement that established the rules by which Beaucamp would be operated, provided that all funds were to be deposited into accounts at the Brewer Federal Credit Union or other banks selected by the members, and required that the accounting was to be conducted by the accrual method. During the period of operation of the LLC, Pamela Stetson, who had worked as a bookkeeper for Beaulieu's furniture business, kept the books. She worked closely with Beaulieu and had very little contact with Campbell, who now questions the accuracy and legitimacy of her records.

There was smooth sailing in the beginning of the partnership and they made a handsome profit on their first project, known as the Daly Rd. project. Subsequent transactions were much more complicated and have generated most of the issues now being litigated.

The Court now turns to an analysis of the two most controversial projects, which the parties referred to as BC2 and BC3. The LLC purchased land at 28 Green Lake Rd. and land at 27 Green Lake Rd. (BC2), and built a house at 27 Green Lake Rd. in Beaulieu's name only that was going to be sold with the hope of making a profit. Both Campbell and Beaulieu worked on the construction of the house. The LLC had borrowed approximately $100,000 that was spent on construction costs and in July of 2007, Mr. Beaulieu and his wife obtained a home equity loan in the approximate amount of $130,000 at a rate that was lower than the rate on the loan to the LLC and paid off the LLC loan. Most of the remaining loan proceeds went into the Beaucamp account and Mr. and Ms. Beaulieu made the monthly payments with their personal funds. The total LLC investment into the project was $121,000 and currently Mr. and Ms. Beaulieu reside at the property but the circumstances surrounding their decision to

2

move into the house are disputed. Beaulieu asserts that they did so with the Campbells' approval out of economic necessity because the housing market had crashed and they were unable to sell it. The Campbells assert that they never agreed and that the Beaulieus unilaterally decided to take over the property. Twenty-eight Green Lake Rd. remains an LLC asset and the parties dispute its value.

In August of 2007, the Campbells purchased a lakefront lot, the so-called Pine Trail property, from the estate of Ms. Campbell's mother for $40,000. Beaulieu claims he now deserves compensation for $10,000 he contributed to the purchase of the lot, while Campbell asserts that he has already paid that amount back to Beaulieu. According to Beaulieu, the plan was for the LLC to build a house on the property and sell it for a profit, the project referred to as BC3. Campbell insists that the parties had intended that it be the Campbells' property, that Beaucamp would build a house on the property and that the Campbells would reside there. In the ensuing years Beaulieu and Campbell built a home on the property with LLC funds and the Campbells eventually moved in and resided there. At some point during the planning or construction, Campbell informed Beaulieu that he no longer was interested in developing properties with Beaulieu. Because BC3 was primarily built with LLC resources, the Campbells did not have to borrow money to finance its construction. The Beaulieus maintain that after Campbell decided that the LLC should be dissolved, Todd decided to complete the last LLC project, BC3, and then wind up operations by dividing LLC assets according to the Operating Agreement. Campbell insists that the LLC financed the construction of their house for him in order to offset the gain from the LLC to the Beaulieus for having taken over 27 Green Lake Rd., and further argue that despite this offset, the LLC or the Beaulieus owe him an additional sum.

3

During the operation of the LLC, Ms. Stetson established several accounts to track its business, including Tom's account to track Campbell's LLC debits and credits, as well as Todd's account to track Beaulieu's LLC debits and credits. She also established a BC2 account and a BC3 account that listed all expenses related to those two projects. Finally, she kept a balance sheet which presented all debits and credits from the various accounts in summary form at a given time.

The defense has argued that the accounts were unreliable and should not be admitted into evidence, but the Court has admitted them pursuant to the business records exception to the hearsay rule. After receiving monthly vendor statements, credit card statements, and bank statements, Mr. Beaulieu would go over them and discern which expenditures were the responsibility of the LLC and in which account statement the expenditure should be placed. The fact that Mr. Beaulieu was exclusively involved in making these determinations does not make them inadmissible; Mr. Campbell could have been just as involved if he had been interested. Each record was made at or near the time of the event from information transmitted by someone with knowledge, was kept in the ordinary course of business, making the record was a regular practice of that activity, and neither the source of information nor the method of preparation indicates a lack of trustworthiness.

The Court will now turn to areas of disagreement and resolve them[1].

## Analysis

---

[1] Throughout the proceedings, neither party argued that one party contributed more time and effort than did the other. Because of this, the Court's analysis will focus on the relative financial contributions of the parties as well as the benefit conferred upon each party in deciding the issues raised.

Ultimately, the Court must focus on issues surrounding dissolution, which is relief sought by both sides. Dissolution applies here because plaintiffs and defendants accuse each other of acting in an illegal manner in failing to fulfil their responsibilities under the Beaucamp LLC Operating agreement. A limited liability company is dissolved and its activities wound up "on application by a member, the entry of an order dissolving the limited liability company on the grounds that the members in control ... have acted, are acting, or will act in a manner that is illegal of fraudulent." 31 M.R.S. § 1595(1)(E).

Before resolving dissolution issues, however, the Court will evaluate the other causes of action alleged by the parties to determine whether Beaulieu or Campbell is liable on a particular cause of action to the other personal party or to the LLC. Each is alleging that the other illegally or improperly profited in conducting LLC activities. In conducting this analysis, the Court is aware of the provisions of 31 M.R.S. § 1637 (3)(A), which provide that a derivative action commenced by a member of a closely held limited liability company may be treated as a direct action brought by the member for the member's benefit, but this provision is not critical here because Beaulieu has already separated out his causes of action, distinguishing between those brought by him and those brought by the LLC, and a suitable resolution to all claims can be achieved without relying upon that statute.

### A. CLAIMS

1. Breach of Operating Agreement, Count VI (Personally) and Breach of Contract, Count I (Derivatively)

The Beaucamp LLC Operating Agreement is a minimalist document that has a variety of procedural provisions, indicates that the members each have 50% ownership

and have contributed equal amounts of money and value to the LLC, and states that profits are to be distributed by unanimous vote of the members. It does not specify how the expenses of the LLC are to be divided, how profits are to be divided if the members disagree on the division of profits, and how a windup should be accomplished. Because it does not contain provisions directly relevant to the alleged violations here, there is no breach of contract.

Plaintiff also alleges the existence of an oral contract that the parties then entered into after Campbell stated that he no longer wanted to engage in LLC activities with Beaulieu. According to Beaulieu, they agreed that he would inject funds into the LLC and provide his labor in completing Pine Trail which would become the Campbells' residence, whereupon they would borrow against the finished house and pay off sums that would be due Beaulieu and dissolve the LLC. They did not agree upon an amount to be paid nor a detailed method by which the amount could be established. "There is no more settled rule of law applicable to actions based on contracts than that an agreement, in order to be binding, must be sufficiently definite to enable the Court to determine its exact meaning and fix exactly the legal liability of the parties." *Corthell v. Summit Thread Co.*, 132 Me. 94, 99 (Me. 1993). Because of the absence of specificity in this alleged oral contract, it is not enforceable and plaintiff does not prevail on this count.

2. Breach of Fiduciary Duty, Count V (Personally)

Generally, one member of a closely held limited liability has a fiduciary duty to the other member(s), although that duty may be limited by written agreement, *see* 31 M.R.S. § 1521(2)(B), which is not present here.

Plaintiff alleges that defendant Campbell failed "to participate in a decision to take LLC action on his debt." The claim is based on the allegation that Campbell failed

6

to encumber the finished house to obtain money to repay the LLC in an effort to cooperatively windup operations. The reality is that Campbell did not have an LLC related fiduciary duty to borrow money and pay a sum to the LLC. There is no such provision in the operating agreement and the Court knows of no other source of such a duty. Although Beaulieu requested that Campbell obtain a loan to pay the LLC an amount that Beaulieu claimed was due, Campbell asserts he never agreed to do so and maintained he owed nothing to Beaucamp. The fact that Beaulieu wanted Campbell to borrow money to repay Beaucamp does not imply that his failure to do so breached any fiduciary duty.

### 3. Equitable Estoppel, Count IX (Personally)

The Court is not aware that this doctrine can stand as a cause of action because its use is limited to being interposed as a defense to a claim. *See, e.g., Waterville Homes, Inc. v. Me. Dep't of Transp.*, 589 A.2d 455, 457 (Me. 1991) ("equitable estoppel provides one with a shield, it is a departure to suggest it should be turned into a sword...It is an equitable *defense*"); *Grande v. St. Paul Fire & Marine Ins. Co.*, 436 F.3d 277, 279 n.1 (1st Cir. 2006) ("[e]stoppel is not ordinarily viewed as an independent cause of action, but as a set of rules preventing someone in specified circumstances from altering or contesting a proposition...Maine case law is unclear.").

### 4. Quantum Meruit – (Count II Derivatively), (Count VII Personally)

"In the absence of circumstances indicating otherwise, it is inferred that a person who requests another to perform services for him or to transfer property to him thereby bargains to pay therefor." RESTATEMENT OF RESTITUTION § 107(2)(1937). The elements of a quantum meruit claim are grounded in implied contract and consist of (1) labor materials or services rendered by plaintiff to defendant, (2) with the defendant's consent, (3) under circumstances making it reasonable for plaintiff to expect payment.

7

*See Howard & Bowie, P.A. v. Collins,* 2000 ME 148, ¶17. There must be an inference present that the party rendering services reasonably expected compensation and that the other party acted so as to justify that expectation. *Id.*

Here, the LLC rendered materials and services to Campbell with his consent but the critical issue is whether the materials and services were rendered under circumstances making it reasonable for plaintiff to expect payment. At the time, Beaulieu was residing in the residence the LLC had constructed at 27 Green Lake Rd. and was paying a personal mortgage obtained to pay off the cost of materials and services incurred by the LLC in its construction. Additionally, he was paying for materials and contributing his labor for the construction of Campbell's Pine Trail home, with the goal of the LLC receiving some degree of compensation from Campbell before it was dissolved. It would be enticing to find that the elements of *quantum meruit* have been proved because it was reasonable for Beaulieu to expect some degree of compensation to the LLC, but it is clear that it was not reasonable to expect a particular amount since he and Campbell were at odds and not speaking civilly to each other. *Quantum meruit* recovery arises when the parties' conduct raises the inference that they intended to make mutual promises and be bound by them. *See In re Armorflite Precision, Inc.,* 48 Bankr. 994, 999 (Bankr. D. Me. 1985). Because it is clear to the Court that the parties were not close to agreeing upon the degree of compensation to the LLC for its work on Pine Trail, there is no implied contract here and *Quantum meruit* has not been proved.

5. Unjust Enrichment – (Count III Derivatively), (Count VIII Personally)

Unjust enrichment is a form of restitution to address certain benefits conferred without compensation. The elements of the equitable doctrine include (1) that the plaintiff conferred a benefit upon the defendant; (2) that the defendant appreciated or

8

had knowledge of the benefit; and (3) that the defendant's acceptance or retention of the benefit was under such circumstances as to make it inequitable for defendant to retain the benefit without payment for its value. The measure of damages is the value of the benefit conferred. *Bowden v. Grindle*, 651 A.2d 347, 350 (Me. 1994).

Here, the LLC, based primarily on the contributions and labor of Beaulieu, conferred a benefit upon the Campbells. Whether or not the Pine Trail project was ever an LLC project or ever intended to become an LLC property, the LLC provided materials and paid for services used in construction of what has become the Campbells' home. It is clear that Beaulieu thought he was putting his money into an LLC project and that at some time he continued to contribute even though he was aware the Campbells would be retaining the property, but believed that ultimately the relative contributions of the two would be reconciled upon the dissolution of the LLC. The Campbells happily received the benefit. Finally, it would be inequitable, vis-à-vis the LLC, for the Campbells to retain the benefit because ultimately they would be retaining ownership of the real estate and home without any corresponding benefit to Beaucamp.[2]

Based on these findings, and accepting the validity of the Stetson accounts, the Court finds that the Campbells were unjustly enriched in the amount of $98,970. The Court finds that the amount should not be increased by interest due to Beaulieu because he made capital contributions to the LLC in conferring this benefit and historically

---

[2] It could be argued that the Court should consider the relative contributions of Beaulieu and Campbell to the LLC in deciding whether the retention of the benefit here was inequitable. Obviously, if Campbell's previous contributions to the LLC were far greater than Beaulieu's that fact could influence the issue of whether the retention of the benefit was inequitable. In this decision, however, the Court is using a two-step approach -- first deciding the claims between the parties, then making an order of dissolution that considers the relative contributions of the parties, including the resolution of the other claims raised in this litigation. An analysis of prior contributions is not being left out, but will be addressed in step 2.

9

interest had not been earned on a member's capital contributions, no agreement provided for it, and most accepted accounting procedures do not require it. There is no unjust enrichment personally because it was the LLC that was disadvantaged, not Beaulieu.

Although the issues in this case are complex and confusing, there is one stark qualitative consideration that supports and demands this result. If it were otherwise, Campbell would be emerging from this joint enterprise with a fine shorefront home with no mortgage, while Beaulieu would be emerging with a fine home that was encumbered to the benefit of the LLC, and remains encumbered.

### B. COUNTERCLAIMS

#### 1. Dissolution (Count I) and Accounting (Count II)

The Court will address dissolution issues in the next portion of this Order. As applied here, asking for an "accounting" is virtually the same as asking the Court to resolve dissolution issues because "[an] 'accounting' is a well-established restitutionary remedy, the fundamental objective of which is to prevent a party from being unjustly enriched by having breached a legal or equitable duty to another. Horton & McGehee, *Maine Civil Remedies* § 8-1 at 199 (4th ed. 2004).

#### 2. Quantum Meruit (Count IV), Unjust Enrichment (Count V)

The Court has already defined the elements of these causes of action. Concerning quantum meruit, counterclaimant asserts that he supplied labor and materials for BC2, with Beaulieu's knowledge, reasonably expecting compensation. With regard to unjust enrichment, Campbell claims that he supplied labor and materials for BC2 with the agreement that it would be sold, and that Beaulieu moved in and treated it as his own, instead of selling it. By the time that Beaulieu moved into 27 Green

10

Lake Rd., he had refinanced the loan related to the construction such that he was personally indebted in the an amount exceeding the $121,000 that the LLC had invested in the project. Beaulieu also borrowed additional sums that he invested in the LLC, which were used primarily to fund the construction of Pine Trail, which was to become the Campbells' primary residence.

Deciding these causes of action hinges on one's perception of the underlying transactions. If the focus in evaluating BC2 is on the potential profit lost to the LLC by Beaulieu's action of taking control of 27 Green Lake Rd., then it could be argued that although Beaulieu -not the LLC- was personally liable for the debt related to that project, Campbell was denied the opportunity to enjoy the fruits of his labor in the form of any profit from its sale. If permitting Beaulieu to move into the property were a Beaucamp LLC decision, however, then the issue is resolved by throwing the finances of BC2 into the mix of debits and credits to be considered in the dissolution of the LLC, and lost profit opportunity would not be considered. To decide which approach -pure dollars and cents vs. lost potential profit – should be taken, the Court will comment on Beaucamp LLC decision making.

The Beaucamp LLC operating agreement provides that "No member shall have the authority to do any act, without the prior consent of the other members, that would be detrimental to the interest of the company." Art. V Operating Agreement Beaucamp LLC. Generally Beaulieu and Campbell reached overt agreement on decisions related to LLC operations, with two important exceptions that are the prime sources of this litigation. The Court views these two important critical decisions as having very similar features and they are fundamental to both the BC2 and BC3 projects. When Beaulieu moved into 27 Green Lake Rd., Campbell acquiesced in the move but may not have been happy about it. In many ways, however, it made sense. Beaulieu was personally

11

responsible for the related indebtedness, the deed was in his name, and the LLC was experiencing difficulty in selling it. Additionally, the Beaulieus moved in out of necessity and the decision to remain and keep it as their own came after it was clear that Pine Trail would become the Campbell's property. Campbell demonstrated his acquiescence in the decision by continuing to finish the house with Beaulieu, and by jointly working on Pine Trail. He did not explicitly object to the move and did not commence legal proceedings to prevent it. Similarly, Beaulieu clearly conceived of the Pine Trail project as an LLC project but acquiesced in, and eventually agreed, that it would become the Campbells' property. Neither member vetoed the decision of the other member in these two instances and each decision was implemented as a result of the inaction of the other.

Under these circumstances there was tacit LLC agreement that Beaulieu would move into 27 Green Lake Rd. and that the Campbell would move into Pine Trail. Because of this, the value lost to Campbell by Beaulieu's "take over" of BC2 did not include lost profit.

### 3. Breach of Fiduciary Duty (Count III)

According to 31 M.R.S. § 1559(1), LLC members are required to discharge their duties in good faith with a view to the interests of the limited liability company and of the members. Counterclaimant asserts that Beaulieu breached this duty by taking possession of 27 Green Lake Rd. without paying expected profits to Campbell and by not paying fair rental to Beaucamp LLC. Because the Court has already found that Beaulieu took possession of the property with the tacit approval of Campbell, he did not breach a duty of good faith.


### C. DISSOLUTION

12

1. Count IV and Counterclaim Count I

The Court agrees with both parties that the it should enter an order of dissolution under 31 M.R.S. § 1595. Not only is it not reasonably practical for Beaucamp to carry on its activities, but each is alleging that the other is acting in a fraudulent or illegal manner. The Court must then turn to 31 M.R.S. § 1601 to determine how the company's assets must be applied. As applied here, after paying creditors, any surplus is paid to the members "in proportions in which the owners of transferable interests share in distributions prior to dissolution." 31 M.R.S. § 1601(2)(B). If the LLC does not have sufficient surplus to accomplish this, any surplus must be distributed among the owners of transferable interests in proportion to the value of their respective unreturned contributions.

With these requirements in mind, the Court enters the following Order dissolving Beaucamp LLC. :

1. In winding up the LLC, it shall be considered that Mr. Campbell owes the LLC the sum of $98,970.

2. Rather than wait for a sale of 28 Green Lake Rd., a sale that would involve two people who have great animosity against each other, it shall be distributed to Beaulieu. The Court finds that its value at the time of hearing was $40,000 and in computing any amount due to Beaulieu in the winding up, this value to him should be used.

3. Mr. Beaulieu shall be responsible for implementing the actual winding up of the LLC, including paying any remaining third party creditors and filing any required tax returns.

4. The Court accepts the accounting that Beaulieu's contributions equal $102,845 while Campbell's equal $205. Any Beaucamp LLC surplus shall be paid to these

13

two members in those proportions. Ultimately, the amount that Campbell must pay Beaulieu, computed under the terms of this Order, shall be entered as a Judgment of this Court.

5. Mr. Campbell can raise objections to Mr. Beaulieu's actions in winding up Beaucamp LLC in conformity with this order by filing the objection with this Court, which shall maintain continuing authority to supervise the dissolution.

6. Neither party is ordered to pay the attorney fees of the other. Although the parties had disparate views on how the LLC should be dissolved, each believed in the position taken and neither acted in bad faith.

The Entry is:

Judgment for the Plaintiff on Counts III and IV of the Complaint and for the Counterclaim Plaintiff on Count I of the Counterclaims. Judgment for the Defendant on all Remaining Counts and for the Counterclaim Defendant on all Remaining Counterclaims. The Parties are ORDERED to comply with the Court's Wind Up Order Herein.

Dated: February 21, 2018

WILLIAM ANDERSON
JUSTICE, SUPERIOR COURT

ORDER/JUDGMENT ENTERED IN THE
COURT DOCKET ON: 2/22/18

14

TODD BEAULIEU OBO BEAUCAMP LLC  - PLAINTIFF
1031 MAIN ROAD
HOLDEN ME 04429
Attorney for: TODD BEAULIEU OBO BEAUCAMP LLC
CHARLES COX  - RETAINED
BLOOMER RUSSELL BEAUPAIN
PO BOX 1404
175 EXCHANGE STREET, SUITE 200
BANGOR ME 04402-1404


TODD BEAULIEU AMENDED IN  - PLAINTIFF

Attorney for: TODD BEAULIEU AMENDED IN
CHARLES COX  - RETAINED
BLOOMER RUSSELL BEAUPAIN
PO BOX 1404
175 EXCHANGE STREET, SUITE 200
BANGOR ME 04402-1404


vs
THOMAS CAMPBELL  - DEFENDANT
96 PINE TRAIL
DEDHAM ME 04429
Attorney for: THOMAS CAMPBELL
ERIK BLACK  - RETAINED
GILBERT & GREIF
82 COLUMBIA ST
PO BOX 2339
BANGOR ME 04402-2339

Attorney for: THOMAS CAMPBELL
JULIE FARR  - WITHDRAWN 12/15/2016
GILBERT & GREIF
82 COLUMBIA ST
PO BOX 2339
BANGOR ME 04402-2339

Attorney for: THOMAS CAMPBELL
ARTHUR GREIF  - RETAINED
GILBERT & GREIF
82 COLUMBIA ST
PO BOX 2339
BANGOR ME 04402-2339

PIXIE CAMPBELL  - DEFENDANT
96 PINE TRAIL
DEDHAM ME 04429
Attorney for: PIXIE CAMPBELL
ERIK BLACK  - RETAINED
GILBERT & GREIF
82 COLUMBIA ST
PO BOX 2339
BANGOR ME 04402-2339

SUPERIOR COURT
PENOBSCOT, ss.
Docket No   BANSC-CV-2014-00100


DOCKET RECORD

Attorney for: PIXIE CAMPBELL
JULIE FARR  - WITHDRAWN 12/15/2016
GILBERT & GREIF
82 COLUMBIA ST
PO BOX 2339
BANGOR ME 04402-2339

Attorney for: PIXIE CAMPBELL
ARTHUR GREIF  - RETAINED
GILBERT & GREIF
82 COLUMBIA ST
PO BOX 2339
BANGOR ME 04402-2339

Filing Document: COMPLAINT                    Minor Case Type: CONTRACT
Filing Date: 06/02/2014

## Docket Events:
06/04/2014 FILING DOCUMENT - COMPLAINT FILED ON 06/02/2014

06/04/2014 Party(s):  TODD BEAULIEU OBO BEAUCAMP LLC
           ATTORNEY - RETAINED ENTERED ON 06/02/2014
           Plaintiff's Attorney: CHARLES COX

06/04/2014 Party(s):  TODD BEAULIEU OBO BEAUCAMP LLC
           MOTION - APPROVAL ATTACH/TRUSTEE PROC FILED WITH AFFIDAVIT ON 06/02/2014
           Plaintiff's Attorney:  CHARLES COX
           MOTION FOR PREJUDGMENT ATTACHMENT WITH AFFIDAVIT OF TODD BEAULIEU AND AFFIDAVIT OF PAMELA
           STETSON

06/04/2014 Party(s):  THOMAS CAMPBELL
           SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 05/27/2014
           THOMAS CAMPBELL BY MADISON CAMPBELL.

06/04/2014 Party(s):  THOMAS CAMPBELL
           SUMMONS/SERVICE - CIVIL SUMMONS FILED ON 06/02/2014
           Plaintiff's Attorney:  CHARLES COX

06/04/2014 Party(s):  PIXIE CAMPBELL
           SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 05/27/2014
           PIXIE CAMPBELL BY MADISON CAMPBELL

06/04/2014 Party(s):  PIXIE CAMPBELL
           SUMMONS/SERVICE - CIVIL SUMMONS FILED ON 06/02/2014
           Plaintiff's Attorney:  CHARLES COX

06/12/2014 Party(s):  THOMAS CAMPBELL,PIXIE CAMPBELL
           MOTION - MOTION FOR ENLARGEMENT OF TIME FILED ON 06/11/2014
           Defendant's Attorney: ERIK BLACK
           DEFENDANTS' UNOPPOSED MOTION FOR ENLARGMENT OF TIME TO FILE ANSWERS AND AFFIRMATIVE
           DEFENSES TO PLAINTIFF'S COMPLAINT AND TO RESPOND TO PLAINTIFF'S MOTION FOR PRE-JUDGMENT
           ATTACHMENT UNTIL JULY 10, 2014.